COMMERCIAL TRUCK & TRAILER
SALES, INC., et al.,
Petitioners-Defendants,

v.

Mary C. McCAMPBELL, Administratrix
of the Estate of Charles Miller,
Deceased, Respondent-Plaintiff.

Supreme Court of Tennessee.

April 2, 1979.

Fred  H.  Cagle,  Jr.,  John  W.  Wheeler,
William  A.  Zierer,  Ray  L.  Jenkins,  W.  P.

O'Neil, Bernard E. Bernstein, Knoxville, Kendred A. White, Madisonville, for petitioners-defendants; Frantz, McConnell & Seymour, Hodges, Doughty & Carson, Morton, Lewis, King & Krieg, Bernstein, Susano, Stair & Cohen, Knoxville, of counsel.

Robert W. Ritchie, Joseph M. Tipton, Knoxville, for respondent-plaintiff.

## OPINION

HARBISON, Justice.

This is a combined products liability and legal malpractice action. Respondent, as Administratrix of the deceased victim of an accidental injury, sued six defendants for the death of decedent upon theories of negligence, strict liability in tort and breach of implied warranties under the Uniform Commercial Code. As a precautionary measure, she also sued a seventh defendant, her former attorney, for alleged negligence in failing timely to institute the wrongful death action.

The trial court dismissed the suit as to all defendants. The Court of Appeals affirmed insofar as the malpractice action was concerned, holding venue to be improper. It reversed as to five of the defendants in the personal injury action, holding that the plaintiff was entitled to maintain an action for breach of the statutory warranties, and that this aspect of the suit was governed by the four-year statute of limitations contained in the Uniform Commercial Code, T.C.A. § 47–2–725. These five defendants sought further review by petition for certiorari, and the plaintiff also petitioned for review of the dismissal of the malpractice suit. The petitions of all of these parties were granted.

### A. *The Parties and the Pleadings*

The complaint sought damages for injuries and the subsequent death of Charles Miller from an accident which occurred in February, 1974. The action was brought by the administratrix and next-of-kin of the decedent, Mrs. Mary C. McCampbell.

The complaint alleged that the decedent was injured when a dump-truck, owned by defendant Eugene Crawley, was delivering gravel to the decedent's property in Monroe County, Tennessee. It was alleged that a hoist failed while the truck bed was in a raised position, causing the bed to tilt and the gravel to be spilled upon the decedent. Allegedly as a result of injuries sustained in this accident, the decedent died on March 3, 1974, a little less than one month later.

The complaint contained various allegations of common-law negligence against Crawley, the owner of the vehicle, based primarily upon conduct of his employee and driver, Daniel R. Plemons.

The other five defendants to this part of the action were sued on theories of strict liability, negligence and breach of warranties of merchantability and fitness for particular purposes. The complaint alleged that the defendant American Lease Plans, Inc., either sold the truck to Eugene Crawley or transferred it to him under a lease-purchase agreement. It was alleged that American Lease Plans, Inc., was engaged in the business of leasing and selling the type of vehicle involved in the accident. The defendant Commercial Truck & Trailer Sales, Inc., was also alleged to be engaged in the business of assembling and selling such vehicles. The complaint stated that the latter company actually delivered the truck to Eugene Crawley but did so under an arrangement whereby American Lease Plans, Inc., would ultimately sell it to him.

The defendant Reynolds Body Company was alleged to be engaged in selling, manufacturing and installing truck beds and hoist apparatus of the type involved, and it allegedly sold the truck bed and hoist to Commercial Truck & Trailer Sales, Inc. The defendant Peabody Galion Corporation was alleged to have manufactured, assembled and sold the hoist to Reynolds Body Company, and the defendant Joseph T. Ryerson & Son was alleged to have manufactured, assembled and sold the cylinder and its components, which were part of the hoist apparatus.

Apart from the malpractice action, each of the defendants filed a motion for sum-

mary judgment. Only one filed an answer. All of the defendants contended that the action was barred by the one-year statute of limitations, and four of them alleged that as a matter of law the plaintiff was not entitled to recover for breach of warranties of merchantability and fitness for a particular purpose under the Uniform Commercial Code.

As to the malpractice action, the present suit was instituted on October 29, 1976. The complaint alleged that the plaintiff had originally employed respondent J. D. Lee, an attorney, to prosecute an action for damages against the other defendants for the death of her father. It was alleged that he failed to institute the action within one year from the date of the accident, although he did file a complaint on February 5, 1975. It was stated that this former action was dismissed by voluntary nonsuit. The plaintiff claimed that if the former suit was not timely initiated, then she was entitled to recover damages as the result of alleged negligence and breach of contract by the defendant Lee. This defendant filed a motion to dismiss based upon improper joinder and upon the ground that venue was localized in Monroe County under the provisions of T.C.A. § 20–401.

### B. *Action of the Trial Court and the Record on Appeal*

The trial court dismissed the malpractice suit but the record does not reflect the reason for his decision. It is not possible to ascertain from the judgment entered whether the dismissal was based upon improper joinder, improper venue or both.

The personal injury and wrongful death action was dismissed in part upon the one-year statute of limitations, the court finding that the accident occurred on February 4, 1974 and that the first suit was not instituted until February 5, 1975. The court held that the suit was barred by the one-year statute of limitations insofar as the strict liability and common-law negligence theories were concerned. It further held that actions for breach of warranties "do not apply to a wrongful death action"

so as to allow a greater period of time in which to commence such action.

This judgment, entered on April 29, 1977, states that the court relied upon and considered not only certain affidavits which have accompanied the record on appeal but "depositions filed both for and against the motions" for summary judgment.

None of these depositions, which might well be pertinent to many aspects of this case, were included in the appellate record by the appealing party, Mary C. McCampbell, or by any of the other parties, despite the affirmative statement in the record that they had been filed with the trial court and considered by it. Such depositions were not required to be incorporated in a bill of exceptions, but should have been filed as a part of the technical record. *See* Rule 14(8)(a), Rules of the Tennessee Supreme Court.

The Court of Appeals would have been well within its discretionary authority in dismissing the appeal or in insisting that these depositions be furnished to it before attempting to decide the complex issues upon which the parties seek appellate review. It did not do so, however, but accepted the case upon an incomplete record and undertook to deal with the issues presented by the parties.

Under our direction, the clerk of this Court has undertaken to obtain these discovery depositions, because we felt that they might contain important factual information about the accident, the status of the parties, their residence and other issues sought to be presented for review. The clerk has succeeded in obtaining two of four depositions filed by the defending parties. We have reviewed these carefully and find that they do, indeed, contain some information relevant to disposition of portions of the case. The depositions of the owner of the truck and of one other witness, however, have not been located, and we have no means of knowing their contents. Nor are we advised whether the plaintiff did file additional depositions in opposition to the summary judgment motions as indicated in the final order of the trial court.

In the trial court there was initially a dispute as to whether the accident occurred on February 4, 1974, or on February 5. As the case comes to us, it is conceded that the correct date was February 4. Accordingly the original suit for damages was not instituted within one year from that date but was one day late, having been filed on February 5, 1975.

Probably because this date was no longer disputed, counsel saw fit not to include the discovery depositions in the record on appeal. We have concluded not to dismiss the appeal because of an incomplete record since the case has now been reviewed by the Court of Appeals.

### C. Action of the Court of Appeals

As to the legal malpractice action, the Court of Appeals, in a divided decision, held that the provisions of T.C.A. § 20–401 required the action to be brought in the county where the cause of action "arose." It made some factual assumptions which we cannot verify from the record and concluded that the employment of counsel occurred in Monroe County where the attorney resided. The court then concluded that a legal malpractice action based on nonfeasance of an attorney "arises" in the county of the situs of the attorney-client relationship. It further concluded that since the attorney was shown to be a resident of Monroe County, "in legal contemplation" he must have been in that county when he failed to file the suit. The court held that the cause of action for legal malpractice could only have been filed in the county where the cause of action apparently arose, and the conclusion was reached that "Monroe County was the only county in which Lee could be sued."

As to the personal injury action, the Court of Appeals held that it was time-barred upon all theories and claims except that predicated upon breach of statutory implied warranties, T.C.A. §§ 47–2–314 and 315. As to that claim, the four-year statute of limitations provided in the Uniform Commercial Code was deemed applicable, and the action for breach of warranty was

held to fall within the purview of and to be authorized by the Tennessee Wrongful Death Statute, T.C.A. § 20–607.

### OUR CONCLUSIONS

■ I. *The Malpractice Action.* We are of the opinion that the Court of Appeals was in error in holding that the action for legal malpractice was localized in the county of residence or employment of the attorney.

This is a transitory action, sounding either in contract or in tort, subject to a one-year statute of limitations. *See* T.C.A. § 28–304.

Venue in transitory actions, where not controlled by a specific statute, is governed by the general provisions of T.C.A. § 20–401 as follows:

"In all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found. If, however, the plaintiff and defendant both reside in the same county in this state, then such action shall be brought either in the county where the cause of action arose or in the county of their residence."

As previously stated, the Court of Appeals was of the opinion that the cause of action for malpractice "arose" in Monroe County. There is no evidentiary basis for this conclusion in that portion of the record which has been filed. The deposition of Mrs. McCampbell is one of the two which we have been able to obtain, and there is no indication in it as to when or where she employed counsel.

■ Further, it appears conclusively from that deposition that Mrs. McCampbell does not reside in Monroe County but that she is a resident of Memphis, Shelby County, Tennessee. Accordingly she and the attorney do not reside in the same county, and the action is in no sense "localized" by the provisions of T.C.A. § 20–401. It is the actual residence of a personal representative, not the county of official qualification,

which is of legal significance for venue purposes under this statute. *See Denny v. Webb*, 199 Tenn. 39, 281 S.W.2d 698 (1955); *Sherrill v. Stevenson*, 174 Tenn. 672, 130 S.W.2d 110 (1939).

In response to the petition for certiorari filed by the Administratrix, counsel for the respondent attorney insists that even if the Knox County venue in the present case can be sustained, plaintiff failed to comply with the provisions of T.C.A. § 20–211, dealing with the issuance and service of counterpart process.

Such record as we have tends to support this contention, but this was not one of the grounds of the motion to dismiss presented to the trial court. It could present factual issues not yet developed. Therefore our consideration of it in the present state of the record would be inappropriate. Whether process has been correctly issued and served is a matter which may still be raised for consideration by the trial court when respondent files an answer to the merits. *See* Rules 12.02 and 12.08, Tennessee Rules of Civil Procedure.

Despite the fact that the malpractice claim is transitory and not "local" in nature, and although it is not "localized" in this case by reason of a common county of residence of the parties, there is shown no predicate for venue in Knox County unless this claim is properly joined with the breach of warranty action against the other defendants. Process was not served on the defending attorney in Knox County but in Monroe County. There is no allegation that the malpractice action arises out of any professional or business office maintained by the attorney in Knox County, so as to permit venue under the provisions of T.C.A. § 20–405. The Knox County venue, therefore, can be sustained on the present record only if there is proper joinder with the warranty claim, as to which no venue question has been raised.

The Court of Appeals did not address the issue of joinder. The respondent attorney insists that the action against him is premature, since it has not yet been determined that the original action is wholly time-barred. Respondent also insists that any claim to be asserted against him is necessarily different from and does not arise out of the same transactions or events as those involved in the remaining portion of the personal injury suit.

The provisions of Rule 20.01, Tennessee Rules of Civil Procedure, are quite broad and permit the joinder in a single action of several defendants if there is asserted

". . . any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

In an action for malpractice against an attorney, ordinarily a plaintiff is required to prove that recovery could have been made in the original action which the attorney was employed to prosecute. *See Gay & Taylor, Inc. v. American Cas. Co.*, 53 Tenn.App. 120, 381 S.W.2d 304 (1964). Usually many of the same witnesses and basic facts needed to make out a meritorious claim against the defendants in a personal injury action are necessary in an action against an attorney based upon untimely filing.

Respondent is correct in his insistence that the only claims remaining against the other defendants arise out of an alleged breach of warranty. In another section of this opinion we have concluded that the warranty action is still viable in theory. Accordingly if that claim ultimately is found without merit, it will be upon grounds other than those now asserted against the attorney.

Nevertheless, from such pleadings as are presently in the record, it appears that most of the same transactions and events which will be the subject of the warranty action, together with most of the same parties and witnesses, will be involved in the malpractice action. On the present state of the record, we are unprepared to hold as a matter of law that joinder of this action with the wrongful death suit was improper under Rule 20.01. If, after answers are

filed or the issues are otherwise more fully developed, the trial judge concludes that dismissal for improper joinder is appropriate, he may act accordingly.

Further, under the provisions of Rule 20.-02 the trial court may make such orders as will prevent a party from being embarrassed, delayed or put to unnecessary expense, including ordering separate trials or making other orders to prevent delay or injustice. *See also* Rule 21.

The judgment of the Court of Appeals with respect to the malpractice action is reversed, and the cause is remanded to the trial court for further proceedings consistent herewith, but subject to such further orders as the trial court may later see fit to enter with respect to joinder, severance or separate trial.

II. *The Warranty Action.* The plaintiff took no appeal in this case insofar as her negligence action against the owner of the truck was concerned. Further, as the case comes here, it is conceded that all claims against the other five defendants, who were the manufacturers and sellers of the vehicle or its components, are time-barred except such claims as may be tenable under the Uniform Commercial Code.

There is no information in the pleadings or in such depositions as we have received as to the year model of the vehicle, or as to when any of the various defendants may have manufactured, assembled or sold it or its components. It is conceded by all parties that if the four-year statute of limitations contained in T.C.A. § 47–2–725 does apply, the statute begins to run not from the date of the injury or death but from an earlier date as provided in that section. It is entirely possible, therefore, that this four-year statute of limitations may have expired as to some or all of the defendants remaining in the action, but on the record which we have before us, this cannot be ascertained.

The parties broadened on appeal the actual issues decided by the trial court. He did not hold that the decedent, or his personal representative, was outside the purview of the statutory warranties contained in the Uniform Commercial Code, insofar as we can ascertain. After holding that all claims other than those based on warranty were time-barred, his judgment recites:

> "Further, the Court found, as a matter of law, that the allegations as to breach of warranties do not apply to a wrongful death action so as to allow a greater period of time in which to commence said action."

We construe this as a holding that a warranty action abates upon the death of the claimant prior to suit, at least as to any claim for personal injury resulting in death.

On appeal, and in the assignments of error made before us, the defending parties have broadened the issues to include an assertion that the decedent was a "total stranger" to the vehicle in question, not in the chain of commercial transactions, nor one of the protected third-party beneficiaries provided for in T.C.A. § 47–2–318 (a member of the family or household of the purchaser or a guest in his home).

It is the insistence of the defendants that, regardless of whether the action may be brought under the wrongful death statute, there was no "privity" of contract between any of them and the decedent, and that he was a "mere bystander." They assert that he was not entitled to the benefit of the implied warranties of merchantability or fitness for a particular purpose, even if his injuries had not been fatal.

Such information as we can gather from the pleadings and the two depositions before us casts some doubt upon the factual assertion of the defendants that the decedent was such a "total stranger" as to be entirely unforeseeable and outside of the range of the normal use of the product involved. It appears that he was acquainted with the truck driver, who was an uncle of his son's wife. The decedent was an elderly, retired individual, living alone on a farm which either belonged to him or to his son, who resided in Madisonville. The decedent's son, now also deceased, had ordered some gravel to be delivered to the farm, and the decedent apparently decided that

he would like to have some additional gravel spread near a barn. He either requested permission from the truck driver to accompany the latter on a trip to obtain the gravel or was invited by the driver to do so. In all events it appears that the decedent rode as a passenger with the driver to the point of supply and return. When the driver raised the bed of the dump truck, however, gravel was not released. The truck driver was a handicapped individual, described in the record as being crippled and physically disabled. The decedent emerged from the truck to go to the rear in an effort to determine the cause of the difficulty. While he was behind the truck, for some reason the hoist mechanism failed, the bed apparently tilted in some way, and a large quantity of gravel was discharged upon the decedent, allegedly resulting in internal injuries from which he subsequently died.

While we cannot pass upon the question on this undeveloped record, it is not entirely beyond the realm of possibility that the decedent might have been a protected person within the express provisions of T.C.A. § 47–2–318.[1] Assuming that he was not, however, his representative claims that she is entitled nevertheless to maintain an action for breach of a statutory warranty by virtue of the provisions of T.C.A. § 23–3004 as follows:

"In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action."

The Uniform Commercial Code, with its limited third-party beneficiary provisions, was adopted in this state in 1963. T.C.A. § 23–3004 was enacted in 1972, shortly after the decision of this Court in Hargrove v. Newsome, 225 Tenn. 462, 470 S.W.2d 348 (1971).

In the Hargrove case, it was held that privity of contract was required in order for a plaintiff to maintain an action for breach of the implied warranties contained in the Uniform Commercial Code. There it was held that an employee of the purchaser of an allegedly defective product could not sue either the dealer or the manufacturer for breach of an implied warranty. There, as in the present case, all other claims of the plaintiff, based upon negligence and strict liability in tort, were time-barred.

In the opinion, the Court discussed in some detail the history of the adoption of the Uniform Commercial Code in this state, including the restricted third-party provisions of T.C.A. § 47–2–318. It held that T.C.A. § 47–2–318 did change previous law with respect to privity of contract,

". . . but also clearly delineates the extent of the change. Under these circumstances to extend to any person not within the categories mentioned in the statute the right to bring an action upon warranty without privity of contract would, in effect, be amending the statute under the guise of judicial construction. This we should not do." 225 Tenn. at 469–470, 470 S.W.2d at 352.

A few years earlier, in the case of Leach v. Wiles, 58 Tenn.App. 286, 429 S.W.2d 823 (1968) the Court of Appeals had held that the purchaser of a product could maintain an action for breach of implied warranty under the Uniform Commercial Code only against his immediate vendor, not against a remote manufacturer.

It was after these decisions that the provisions of T.C.A. § 23–3004 were enacted. We are constrained to the view that the Legislature meant exactly what it said—that in all actions for personal injury or property damage predicated upon breach of warranty, including those arising under the Uniform Commercial Code, "privity shall not be a requirement to maintain said action."

---

1. Whether a non-purchaser occupying an automobile is so protected is a subject on which there is a split of authority. See, e. g., Williams v. General Motors Corp., 19 N.C.App. 337, 198

S.E.2d 766 (1973) (borrower not covered); Thompson v. Reedman, 199 F.Supp. 120 (E.D. Pa.1961) (guest of owner covered).

■ We are unable to agree with the assertion of the petitioners, shared by the dissenting judge in the Court of Appeals, that this statute purported to eliminate only "vertical" privity but did not broaden so-called "horizontal" privity or enlarge the class of persons who might claim the benefit of an implied warranty. It seems to us that the provisions of T.C.A. § 23–3004 must be read in conjunction with those of T.C.A. § 47–2–318 and that the latter statute was impliedly amended so as to broaden the class of persons who might claim the benefit of a warranty, as well as to eliminate the requirement of "vertical" privity.[2] Essentially the statutory warranties are made to run with the product, at least in the range of its intended and reasonably anticipated use.

It is recognized, of course, that the existence of the remedy of strict liability in tort, pursuant to Restatement (Second) of Torts, § 402A, heretofore recognized in this state[3] has, to some extent, made it unnecessary in many instances for a products liability claimant to seek redress under the provisions of the Uniform Commercial Code. There are many similarities between the tort remedy of strict liability and the statutory action for breach of implied warranty. There are, however, some significant differences of which the applicable statute of limitations is only one.

The existence and reach of these similar remedies have been the subject of widespread litigation and discussion. *See generally* Wade, *Is Section 402A of the Second Restatement of Torts Preempted by the U. C. C. and Therefore Unconstitutional?* 42 Tenn.L.Rev. 123 (1974); Dickerson, *Products Liability: Dean Wade and the Constitutionality of Section 402A,* 44 Tenn.L.Rev. 205 (1977); 20 Vand.L.Rev. 665 (1967). For

treatment of the subject in a state which, like Tennessee, has removed the privity requirement by statute, see Speidel, *The Virginia 'Anti-Privity' Statute: Strict Products Liability Under the Uniform Commercial Code,* 51 Va.L.Rev. 804 (1965).

■ It is not necessary here to attempt to delineate precisely the class of potential plaintiffs who might claim the benefit of an implied warranty under the U.C.C. We are of the opinion that, in view of the removal of the privity requirement by statute, the allegations of the complaint and such proof as we have in the record are sufficient to show that the decedent is not precluded as being a totally unforeseeable claimant. Accordingly we affirm the decision of the Court of Appeals and the implicit holding of the trial court in this regard, on the record thus far developed.

While petitioners concede that consequential damages for breach of an implied warranty under the U.C.C. include personal injuries proximately resulting therefrom, T.C.A. § 47–2–715, it is their insistence that if the personal injury results in subsequent death, no action may be maintained. They further insist that if such an action could be maintained, it would be governed by the one-year statute of limitations generally controlling personal torts. T.C.A. § 28–304.

■ We are not able to sustain either of these contentions. It is well settled in this jurisdiction that in actions for personal injury or property damage resulting from breach of warranty, the four-year statute provided in T.C.A. § 47–2–725 controls. *See McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975); *Layman v. Keller Ladders, Inc.,* 224 Tenn. 396, 455 S.W.2d 594 (1970).[4]

---

**2.** For discussion of the 1972 statute, see 3 Memphis St.L.Rev. 212 (1973); 41 Tenn.L.Rev. 756 (1974).

**3.** *See Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516 (Tenn.1973); *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967).

**4.** We are urged to adopt an approach to the four-year statute under the U.C.C. similar to that used in *Watts v. Putnam County,* 525

S.W.2d 488 (Tenn.1975), to the effect that the four-year warranty period provides a basic period of exposure but that specific actions for personal injury or property damage must be filed within one or three years from the date of injury, respectively. The Tennessee Products Liability Act of 1978 does adopt a similar approach, with an overall six to ten-year limitation, T.C.A. § 23–3703. This approach was

Petitioners insist that an action for breach of warranty is essentially contractual, rather than tortious, in nature, and that Tennessee law respecting the survival of claims only preserves tort, not contractual, causes of action.

There is a fallacy in this contention. Even if the action were contractual in nature, it does not follow that claims based upon contract abate upon the death of the claimant. Rather, it is well settled that such actions generally survive and do not abate upon the death of the holder of a contractual right. *See generally Butler v. Trentham,* 224 Tenn. 528, 458 S.W.2d 13 (1970); T.C.A. § 20–601; 1 Am.Jur.2d, *Abatement, Survival and Revival* §§ 57, 107 (1962); 1 C.J.S. *Abatement and Revival* § 137 (1936). As stated in Carruthers, *History of a Lawsuit* § 48, at 56 (8th ed., Gilreath, 1963):

"The law of Tennessee then, which rests upon authority, reason, and practice is, that in all cases the right of action under a contract, which one has at his death, survives to his representatives, and that the suit should be in the name of such representatives alone, or jointly, with the other parties plaintiff if there be any."

Inasmuch as the present action was brought by the personal representative of the deceased, even if it should be deemed contractual in nature, it is a claim which might well have survived as an asset of the decedent's estate to be asserted by his personal representative.

However, the claim is basically one for personal injuries.[5] It is a statutory right of action under the Uniform Commercial Code. We are unwilling to construe the Code as narrowly as the petitioners contend, so as to permit an action for personal

injuries as consequential damages for breach of a warranty, but to preclude one when those injuries result in death prior to suit. We believe that this would be an unduly restrictive and harsh interpretation. We are in agreement with the Court of Appeals that the language of the Tennessee Wrongful Death Statute, T.C.A. § 20–607, is sufficiently broad to embrace an action where death has resulted from breach of an implied statutory warranty under the Uniform Commercial Code.[6]

The assignments of error of the petitioners with respect to the personal injury action are overruled, and the judgment of the Court of Appeals with respect thereto is affirmed. The cause is remanded to the trial court for further proceedings consistent herewith. All costs incident to this appeal are taxed to the five petitioners in the personal injury action. All other costs will abide the results in the trial court.

COOPER, FONES and BROCK, JJ., and HUMPHREYS, Special Justice, concur.

### ORDER

A petition for rehearing has been filed on behalf of petitioner, American Lease Plans, Inc. Attached to the petition is a document stated to be a copy of one of the discovery depositions filed in and relied upon by the trial court, but not included in the record on appeal. Predicated thereon, petitioner requests this Court to make a determination as to whether, as a matter of law. it could be deemed a "seller" within the provisions of the Uniform Commercial Code.

In our opinion, this issue has not been timely raised or presented on appeal. Further, there may well be documentary evidence or oral testimony which the parties

considered and expressly rejected by the Court as to U.C.C. warranty actions in the *Keller Ladders* case, *supra,* and that position was reiterated in *McCroskey, supra.*

5. Personal injury claims generally arise out of conduct classified as tortious. Their survival, where death does not ensue, is provided for in T.C.A. § 20–602.

6. This case is not governed or affected by the Tennessee Products Liability Act of 1978, T.C.A. §§ 23–3701 *et seq.,* but we note that in that statute the General Assembly, in defining the term "product liability action" included actions for personal injury, death or property damages. These are specifically defined to include claims based upon breach of warranty, express or implied. *See* T.C.A. § 23–3702(g).

wish to produce in order to develop the issue raised.

Accordingly, the petition to rehear is denied at the cost of petitioner, without prejudice, however, to the right of the petitioner to raise and develop in the trial court the issue asserted in the petition for rehearing.