Patrick BAKER, Plaintiff-Appellant,

v.

**PROMARK PRODUCTS WEST, INC.,
and Redi-Rentals, Inc.,
Defendants-Appellees.**

Supreme Court of Tennessee.

June 17, 1985.

J. Paul Robinson, Joe Guess, Knoxville, for plaintiff-appellant.

Timothy A. Priest, Knoxville, for Promark Products West, Inc.

Robert A. Crawford, Knoxville, for Redi-Rentals, Inc.

## OPINION

DROWOTA, Justice.

This is a products liability action brought by Plaintiff against the manufacturer, lessor, and distributor of a stump grinder. The complaint stated that Plaintiff received severe leg injuries while operating the stump grinder. The Plaintiff sought recovery on the theories of strict liability in tort and breach of implied warranties under the Uniform Commercial Code. The trial court granted summary judgment in favor of the lessor, Redi-Rentals, Inc., and the distributor, Promark Products West, Inc. The remaining Defendant, Moriah Industries, manufacturer of the product, was non-suited after entry of the summary judgments and is not a party to this appeal. The judgment of the trial court was affirmed in all respects by the Court of Appeals.

We granted Plaintiff's application for permission to appeal to consider the issue of whether a cause of action can be maintained under the Tennessee Products Liability Act, T.C.A. § 29–28–101 et seq., against a lessor of a product on the theory of breach of the implied warranties of the Uniform Commercial Code, T.C.A. §§ 47–2–314—315. Also at issue is whether the lessor and the distributor are strictly liable in tort for the injuries suffered by the Plaintiff.

The record reflects that the stump grinder in question was rented from Defendant Redi-Rentals, Inc. by a third party. Redi-Rentals is a general rental service store that rents various types of equipment on an hourly, daily or weekly basis. The stump grinder was rented for one-half day for use in landscape work at a private residence in Knoxville. Redi-Rentals denied it was strictly liable for the injuries and pleaded the affirmative defenses of contributory negligence, assumption of the risk and misuse of the product. Plaintiff's strict liability action was premised on his allegation that the product was without a proper guard and was not equipped with adequate instructions or warnings. Plaintiff later amended his complaint to allege breach of implied warranties. It was contended that the stump grinder was unfit for the ordinary and particular purposes for which it was "sold." In its answer to the amended complaint, Redi-Rentals denied the allegations and contended that the warranty provisions of the Uniform Commercial Code are not applicable to a lessor of a product. The trial court granted summary judgment in favor of both Redi-Rentals and Promark, the distributor of the product. There is no indication in the record of the basis for the award of summary judgment. The motion for summary judgment of Promark contained an affidavit from the president of the corporation who stated that Promark was a distributor of the stump grinder but was not in any

way involved in the design or manufacture of the product. He further stated that Promark merely solicited orders for the product and never took physical possession of or obtained title to the product at any time. Promark's affidavit was in no way controverted by Plaintiff.

On appeal to the Court of Appeals, the judgment of the trial court in favor of Redi-Rentals and Promark was affirmed. On the strict liability theory, the Court of Appeals based its decision on T.C.A. § 29–28–106(b), which provides as follows:

> (b) No product liability action as defined in § 29–28–102(6), when based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

Since the record at that time contained no indication that the manufacturer, Moriah Industries, was not subject to service of process in Tennessee or had been judicially declared insolvent, the Court of Appeals held that a cause of action based on strict liability was barred by T.C.A. § 29–28–106(b).

With regard to the theory of breach of implied warranty, the Court of Appeals held that the implied warranties of T.C.A. §§ 47–2–314 and 47–2–315 apply only to the *sale* of goods and are not applicable to chattel leases. In reaching its decision, the Court of Appeals relied strictly on the language of T.C.A. § 47–2–314 which states that "a warranty that the goods shall be merchantable is implied in *a contract for their sale* if the *seller* is a merchant with respect to goods of that kind." (emphasis

supplied.) The Court of Appeals relied also on various definitional sections of the sales article of the Uniform Commercial Code. Section 47–2–103 provides that "[i]n this chapter unless the context otherwise requires ... (d) 'seller' means a person who sells or contracts to sell goods." Similarly "sale" as defined in T.C.A. § 47–2–106, "consists of the passing of title from the seller to the buyer for a price." The Court of Appeals acknowledged that there may be no good reason to restrict warranties to sales, but that expanding warranties to lease or bailment transactions was a matter for the legislature.

Plaintiff argues that this is a products liability action and that the legislature has expressly included chattel leases within the coverage of the Products Liability Act, T.C.A. § 29–28–101 et seq. He relies specifically upon the definition of "seller" contained in T.C.A. § 29–28–102(7):

> "Seller" shall include a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption. *Seller shall also include a lessor or bailor engaged in the business of leasing or bailment of a product.* (emphasis supplied).

Plaintiff contends that the above quoted section impliedly amends the warranty provisions of the U.C.C. Actions for breach of warranty are expressly included in the definition of "product liability action." In T.C.A. § 29–28–102(6), "product liability action" is defined to

> include all actions brought for and on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; *breach of warranty, express or implied* ... or under any other substantive legal

theory in tort or contract whatsoever. (emphasis supplied.)

In addition to the above cited statutory provisions, Plaintiff relies on the decision in *Commercial Truck and Trailer Sales v. McCampbell,* 580 S.W.2d 765 (Tenn.1979), in which this Court held that the Uniform Commercial Code was impliedly amended by T.C.A. § 29–34–104 (formerly § 23–3004), which abolished the requirement of privity in actions "for personal injury or property damage brought on account of negligence, strict liability or breach of warranty...." Although the legislature did not amend the U.C.C. provision dealing with third-party beneficiaries of warranties, T.C.A. § 47–2–318, this Court in *McCampbell* held that the provisions of § 29–34–104 must be read in conjunction with those of § 47–2–318 and thus the U.C.C. was impliedly amended so as to broaden the class of persons who might claim the benefit of a warranty. 580 S.W.2d at 773.

 In the case at bar, Plaintiff follows similar reasoning and maintains that the warranty provisions of the U.C.C. were impliedly amended by the provisions of the Products Liability Act cited previously. After a review of the relevant statutory provisions and the legislative history behind each, we are inclined to believe that the legislature in the Products Liability Act intended to extend protection for products liability injuries beyond the technical buyer-seller relationship encompassed by a strict interpretation of the Uniform Commercial Code. The legislative history in the Products Liability Act indicates that the legislature intended to expand the meaning of "seller" in products liability actions to include lease and bailment situations. An amendment that would have stricken the definition of "seller" in the products liability act was defeated.[1] Therefore we believe that the legislature carefully considered who was to be a "seller" in a products liability action and concluded that bailors and lessors should be liable under the Products Liability Act in appropriate circumstances. Therefore we hold that in a products liability action a cause of action for breach of warranty can be maintained against a lessor or bailor of personal property. Of course, if the action is not a products liability action for personal injury or property damage as defined in § 29–28–102(6), then the provisions of the Uniform Commercial Code would control and an actual "sale" would be required.

We base our conclusion that chattel leases are included within the Products Liability Act on the specific language and legislative history of the Act. However, the holding is further supported by a substantial number of cases from other jurisdictions that have applied the warranty provisions to chattel leases by analogy.[2] As pointed out by Anderson in his treatise on the Uniform Commercial Code,

[c]ourts are impressed by the fact that the Code has failed to provide any warranty protection in a situation that occurs with increasing frequency. Persons who would otherwise be buyers are increasingly leasing for a variety of reasons, not the least of which is the inability to finance the purchase of the goods or the unwillingness to purchase equipment that may soon become obsolete. To some extent leasing of goods is a new way of commercial life and some courts feel that the lessee should not be deprived of the protection that the Code would have conferred upon him if he had purchased instead of rented. The needs and the situation of the lessee are the

---

1. The amendment was offered by Senator Ortwein who stated: "The word 'seller' under this definition is expanded to include bailor and lessor.... [I]t seems to me that if we're going to talk about sellers and define them one place in the statute as being lessors and bailors ... we could wind up that they're going to be sellers in other kinds of litigation." Senate Tape S–67, S.B. 2188 (March 1, 1978).

2. *See generally* "Application of Warranty Provisions of Uniform Commercial Code To Bailments," 48 A.L.R.3d 668 (1973). *See also* Farnsworth, *Implied Warranties of Quality in Non-Sale Cases,* 57 Col.L.Rev. 653 (1957).

same as those of a buyer, but the Code fails to provide for the lessee.

3 R. Anderson, *Uniform Commercial Code*, § 2–314:12, at 119 (1983).

 The Uniform Commercial Code was adopted in Tennessee in 1963. Since that time lease and rental transactions have begun to occur with increasing frequency. Courts and commentators are united in their belief that no good reasons support the denial of warranty protection in non-sale transactions, such as equipment leasing or rentals. Regardless of whether title passes in the transaction, warranties of fitness and merchantability are incident to the transaction because one party to the relationship is in a better position to know and control the condition of a chattel and to distribute the loss which may occur due to the dangerous condition of the chattel. 2 Harper and James, *Torts*, § 28–19 (1965); *See also* W. Prosser, *The Law of Torts*, § 95, at 639 (4th ed. 1971); Farnsworth, *supra*. Cases that have applied the warranty provisions to lease transactions often emphasize that the Uniform Commercial Code by its term applies to "transactions in goods," T.C.A. § 47–2–102; and courts construing § 2–102 have concluded that the phrase "transaction in goods" is broader than "sale." *See Xerox Corp. v. Hawkes*, 124 N.H. 610, 475 A.2d 7, 9 (1984); *see also* 1 R. Anderson, *supra*, § 2–102:4, at 500–01 (1981). Courts have also relied upon the Official Comments to § 2–313, which deals with express warranties. Comment 2 to that section provides:

> [a]lthough this section is limited in its scope and direct purpose to warranties made by the seller as part of a contract for sale, the warranty sections of this Article [chapter] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to direct parties to such a contract. *They may arise in other appropriate circumstances such as in the case of bailments for hire,* whether such bailment is itself the main contract or is merely a supplying of containers for the sale of their contents ...

[The] policies of this Act may offer useful guidance in dealing with further cases as they arise. (emphasis supplied.)

Cases that have held that the warranty provisions apply equally to lease transactions include the following: *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970) (Existence of a bailment instead of a sale does not preclude recovery under a theory of implied warranty); *Skelton v. Druid City Hospital Board,* 459 So.2d 818 (Ala.1984) (the legislature intended that the warranty provisions be broadly interpreted to include transactions in which there is no actual transfer of title, such as rental or lease transactions); *Pisano v. American Leasing,* 146 Cal.App.3d 194, 194 Cal.Rptr. 77 (1983); *W.E. Johnson Equipment Co. v. United Airlines, Inc.,* 238 So.2d 98 (Fla. 1970); *Earman Oil Co. v. Burroughs Corp.,* 625 F.2d 1291, 1292 (5th Cir.1980) (applying Florida law); *Redfern Meats, Inc. v. Hertz Corp.,* 134 Ga.App. 381, 215 S.E.2d 10 (1975); *Glenn Dick Equipment Co. v. Galey Construction, Inc.,* 97 Idaho 216, 541 P.2d 1184 (1975) (the same policy considerations apply to leases and sales); *All States Leasing Co. v. Bass,* 96 Idaho 873, 538 P.2d 1177 (1975) (relying on § 2–102 and the comments to § 2–313); *Knox v. North American Car Corp.,* 80 Ill.App.3d 683, 35 Ill.Dec. 827, 399 N.E.2d 1355 (1980); *Owens v. Patent Scaffolding-Div. of Harsco,* 77 Misc.2d 992, 354 N.Y. S.2d 778, 784 (Sup.Ct.1974), *rev'd. on other grounds,* 50 A.D. 866, 376 N.Y.S.2d 948 (App.Div.1975) ("[t]o allow lease-sale distinctions to subject a supplier-lessor to different liabilities than a supplier-seller preserves distinctions without differences"). Other states have refused to apply the warranty provisions to lease transactions, principally on grounds that had their legislatures intended warranties to run with leased products, they would have so indicated in their respective commercial codes. *See, e.g., Bona v. Graefe,* 264 Md. 69, 285 A.2d 607 (1972); *Leake v. Meredith,* 221 Va. 14, 267 S.E.2d 93 (1980); *Martin v. Ryder Truck Rental, Inc.,* 353 A.2d 581 (Del.1976); and *R. & W. Leasing v. Mosh-*

*er,* 636 P.2d 832 (Mont.1981). However, no jurisdiction that has refused to apply the warranty provisions to lease transactions has a statutory provision similar to T.C.A. § 29–28–102(7). Therefore we believe the Tennessee legislature intended that there exist in a products liability action a cause of action for breach of warranty arising out of a lease transaction. We accordingly remand the case to the trial court to allow the Plaintiff to proceed with his breach of warranty action against the lessor, Redi-Rentals, Inc. On remand, Defendant Redi-Rentals will be given a full opportunity to present any defense to the warranty action. We express no opinion as to whether any warranties were in fact breached.

Plaintiff also sued the distributor, Promark Products West, Inc., on a theory of breach of warranty. In its motion for summary judgment Promark submitted an affidavit in which it was stated that Promark never received title or possession to the product at any time. It merely acted as a broker to arrange sales between the manufacturer, Moriah Industries, and prospective buyers such as Redi-Rentals, Inc. Plaintiff made no attempt to counter the factual averments made by Promark. Neither Plaintiff nor Redi-Rentals relied on Promark's skill or judgment to furnish suitable goods. Therefore liability against Promark on a theory of breach of warranty is precluded. *See Commercial Refrigeration, Inc. v. Refrigeration Products Co.,* 586 S.W.2d 125, 128 (Tenn.App.1979). The judgment in favor of Promark on the theory of breach of warranty is accordingly affirmed.

Plaintiff also sought recovery against both Promark and Redi-Rentals on a strict liability theory. As previously indicated, Plaintiff took a non-suit against the manufacturer, Moriah Industries. In affirming the judgment in favor of Redi-Rentals and Promark, the Court of Appeals relied on T.C.A. § 29–28–106(b) which subjects only the manufacturer to strict liability unless said manufacturer is not subject to process in Tennessee or has been judicially declared insolvent. At the time the

Court of Appeals rendered its decision there was nothing in the record to indicate that the manufacturer was not subject to process or had been judicially declared insolvent. In its appeal to this Court, Plaintiff has filed a motion to consider post-judgment facts pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure. It is Plaintiff's position that Moriah Industries has since been judicially declared insolvent. Plaintiff has established that the parent corporation of Moriah Industries, Arrowhead Continental, Inc., and its president, James F. Giebler, have taken bankruptcy. Exhibits to the motion also indicate that counsel for Moriah Industries has requested to withdraw on grounds he had not been paid for his services in this case. We have considered Plaintiff's post judgment facts and find them insufficient as a matter of law to establish the insolvency of Moriah Industries. However, in accordance with T.C.A. § 27–3–128, we remand this cause to the trial court at which time Plaintiff will be given the opportunity to present other evidence to establish the insolvency of Moriah. If it is successfully established that Moriah Industries has in fact been judicially declared insolvent, then Plaintiff shall be permitted to pursue his strict liability action against both Promark and Redi-Rentals. The fact that Promark had no opportunity to inspect the product is of no consequence in a strict liability action where the manufacturer has been declared insolvent. T.C.A. § 29–28–106(a). Of course, both Defendants will have the opportunity to present affirmative defenses including, but not limited to, assumption of the risk and misuse of the product. Plaintiff of course must bear the initial burden of establishing that the product was "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." T.C.A. § 29–28–105.

The judgment of the trial court in favor of Promark Products West, Inc. on the theory of breach of warranty is affirmed. The judgment in favor of Redi-Rentals, Inc. on the theory of breach of warranty is reversed and remanded to the trial court

for further proceedings consistent with this opinion. With regard to the strict liability of both Defendants, the cause is remanded to the trial court for a finding on the issue of the insolvency of Moriah Industries. If Moriah is found to be insolvent, then a cause of action in strict liability will lie against both Redi-Rentals, Inc. and Promark Products West, Inc. Costs on appeal shall be divided equally between Redi-Rentals, Inc. and Promark Products West, Inc.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.