IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, September 18, 2006

## TEG ENTERPRISES v. ROBERT MILLER

**Direct Appeal from the County Law Court for Sullivan County**
**No. C36479(L)      Hon. Richard E. Ladd, Judge**

---

**No. E2006-00551-COA-R3-CV - FILED NOVEMBER 14, 2006**

---

In this action for damages to personal property caused by an allegedly defective storage container, the Trial Court granted Judgment for plaintiffs. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the County Law Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for appellant.

Robert W. Miller, Kingsport, Tennessee, for appellee.

### OPINION

This action originated in Sessions Court, when the plaintiff sued the defendant for damage to his personal property. Ultimately, a Judgment for the plaintiff was entered in Sessions Court, and defendant appealed to the Law Court which after trial entered a Judgment in favor of the plaintiff in the amount of $15,020.00.

The gravamen of plaintiff's suit is that he had rented a storage container from defendant to store his personal property, and that the unvented storage container caused condensation which damaged his property, since the container was not ventilated.

In resolving the parties' dispute over the statement of the evidence, the Court filed its own statement and stated:

1)   TEG did deliver the containers to Miller's property in Sullivan County and the damage occurred in Sullivan County;

2)   Miller introduced 68 color photos of the units and damaged contents into evidence;

3)   Miller testified to the fair market value of the unsalvageable contents as owner;

4)   Mike Jennings was admitted by the court as an expert and allowed to give an opinion;

5)   No expert was offered by TEG.

The evidence establishes that plaintiff called the defendant's office in Greeneville and inquired about renting two storage containers, one with shelves and one without. Miller testified that he was going to use the containers to store his personal property while he built a new home, and he would need them for as long as a year. He further testified the containers were delivered and set up on his property per his instructions, and that he was not there when the first container was delivered, but was at home when the second container was delivered. He said that the first container was not vented, and that he signed for the second container which was delivered subsequently and that container had a vent.

Plaintiff testified that shortly after the units were delivered, the unshelved unit began to leak, and he called defendant and they sent a repairman to repair it. He testified that he noticed condensation in the unvented container when he was removing the contents to move them into his house, and that he contacted defendant, making a claim for the damages.

Mike Jennings testified as an expert on Miller's behalf, and testified that the condensation was caused by lack of ventilation. Tracy Gass, president of the defendant company, testified that he was in the business of leasing metal storage units to a wide variety of customers, including Wal-mart, Kmart, and other retailers, and this was the first time the company had been sued for damage to property, and had only had one other complaint regarding damage to property kept inside a unit, which he said was due to condensation or rivet or rust.

Gass testified the company used a form contract for the lease of every container, which contained a section entitled "Conditions of Lease Agreement." He testified that when the first unit was delivered, plaintiff was not there and thus did not sign the contract.

These issues are raised on appeal:

1.   Did the trial court err in hearing the case without proper venue?

2. Did the trial court err in holding TEG liable for Miller's personal property without any law or contractual provision which would make TEG liable?

3. Did the trial court err in finding that Miller was not bound to the first contract because he did not sign same?

4. Did the trial court err in failing to honor the contract and the parties' true intentions?

Defendant asserts that the Sullivan County Court was not the proper venue because defendant does not have an office in Sullivan County, and relies on Tenn. Code Ann. §20-4-104, which states that when a corporation has an office in a county for the transaction of business, actions connected with the business of that office may be brought in the county in which such office is located. The Trial Court ruled that Sullivan County was a proper venue, because the damage occurred in Sullivan County and defendant had waived the issue of venue.

> We have recognized:
>
> A party's objections to personal jurisdiction and venue are deemed waived unless they are raised in a timely manner. *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn.1977) Thus, if a party makes a general appearance and does not take issue with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters. *Tennessee Dep't. of Human Serv's v. Daniel*, 659 S.W.2d 625, 626 (Tenn. Ct. App.1983) (personal jurisdiction); *Walkup* v. Covington, 18 Tenn. App. 117, 126, 73 S.W.2d 718, 723-24 (1933) (defect in process).
>
> The Tennessee Rules of Civil Procedure do not define a general appearance. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 99 (Tenn.1984). However, all appearances are deemed to be general appearances unless the contrary appears. *Akers v. Gillentine*, 33 Tenn.App. 212, 221, 231 S.W.2d 372, 376 (1950).
>
> General appearances consist of acts from which it can reasonably be inferred that the party recognizes and submits itself to the jurisdiction of the court. *Patterson v. Rockwell Int'l*, 665 S.W.2d at 99-100; H. Gibson, *Gibson's Suits in Chancery* § 146 (6th ed. 1982).

*Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408 (Tenn. Ct. App. 1988).

In this case, defendant claimed that it asked for and received a continuance of the trial date through its attorney in Sessions Court, but that default judgment was erroneously entered on the original trial date. Defendant then filed a motion asking the Court to set aside the default judgment and to set the case for a trial on the merits. Subsequently, defendant first raised the issue of venue,

which was overruled, based in part on the waiver. Defendant did not plead lack of venue in its earliest motion, but rather had already appeared and asked the Court for a new trial, which was granted, before objecting to venue. We affirm the Trial Court's holding that defendant waived the issue of venue.

We also note the statute which defendant relies upon, to claim venue was improper in Sullivan County, Tenn. Code Ann. §20-4-104 (which uses the permissive language "may be brought" in the county in which the corporation's office is located), has been construed as "allow[ing] the plaintiff to bring the action in the county in which the entity maintains an office; the statute does not, however, require that plaintiff do so." *Five Star Express, Inc. v. Davis*, 866 S.W.2d 944 (Tenn. 1993).

Defendant asserts that it should not be held liable because there is no basis in law nor any contractual provision which would impose liability. Plaintiff contends that this is a products liability action, and since defendant knew the intended use of the containers, defendant should have warned him about the possibility of condensation.

Our product liability statute provides that a "product liability action" includes "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. 'Product liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever". Tenn. Code Ann. § 29-28-102. The Uniform Commercial Code provides for an implied warranty of fitness for a particular purpose, where the seller has reason to know of the buyer's particular purpose, and the buyer is relying upon the seller's skill and judgment to furnish a suitable product. *See* 63 Am. Jur. 2d, *Products Liability* § 730. Tennessee has adopted this provision of the Uniform Commercial Code in § 47-2-315, which states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Our courts have held the seller liable under a theory of implied warranty, so long as the buyer relies on the seller to provide a product suited for a particular purpose. *See Motley v. Fluid Power of Memphis,* 640 S.W.2d 222 (Tenn. Ct. App. 1982), and the Supreme Court has also held that the warranty also applies in lease situations, such as this case. *See Baker v. Promark Products West, Inc.*, 692 S.W.2d 844 (Tenn. 1985). Moreover, the products liability statute provides that a "seller" includes a lessor or bailor. Tenn. Code Ann. § 29-28-102(7).

The evidence establishes that plaintiff had told the defendant that he was going to use

the containers to store his personal property while he built a new home, and he would need them for about a year, and his expert witness testified that the condensation was caused by lack of ventilation. The evidence does not preponderate against the Trial Court's finding of liability. Tenn. R. App. P. 13(d). While the Trial Court did not make specific factual findings, the familiar rule applies if the Trial Court reaches the correct result, we will affirm the judgment.

Finally, defendant argues that the Trial Court should have enforced the written contract sent with the first unit, although it was not signed by plaintiff, and apply the exculpatory language in that contract. It further asserts that since plaintiff signed the standard contract with respect to the second unit, he should be held to the same terms with regard to the unvented unit.

Defendant's argument basically amounts to a "course of dealing" argument, which this Court rejected in another case with similar facts. In *Remco Equipment Sales, Inc., v. Manz*, 952 S.W.2d 437 (Tenn. Ct. App. 1997), an equipment lessor sued its lessee for rental fees and damages associated with the equipment, and also made a claim for attorney's fees. The lessee had rented the same equipment before and signed a written agreement which provided for attorney's fees, but when renting the piece of equipment approximately one month later, the lessor failed to secure lessee's signature on the agreement upon delivery. *Id.* When lessee later failed to pay for the equipment, lessor sued for rent due, damages to the equipment, and attorney's fees. *Id.* The jury found the lessee was obligated for the full amount of the claim, including attorney's fees, finding the second rental included the same terms as were contained in the signed written agreement pertaining to the first rental. *Id.*

We reversed the award of attorney's fees, because the lessee never signed the agreement with regard to the second rental term. *Id.* This Court found that a single transaction was insufficient to establish a "course of dealing" as contemplated by the UCC. *Id.* We further explained that Tennessee's version of the UCC provides that a sequence of previous conduct between parties can establish a common basis of understanding for interpreting their expressions and conduct, but that a single transaction was not sufficient. *Id.* Similarly here, plaintiff did not sign the contract containing the exculpatory language which defendant seeks to have enforced, and the single transaction did not establish a "course of dealing" between the parties. The Trial Court properly refused to apply the written contract's exculpatory language in this case.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to TEG Enterprises.

_____

HERSCHEL PICKENS FRANKS, P.J.