Mary Ann SEALS and Herbert
Seals, Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY,
INC., Beacon Enterprises, and Saw
Mill Industries, Defendants.

No. CIV–1–86–074.

United States District Court,
E.D. Tennessee, S.D.

June 16, 1988.

J. Curtis Smith, Dunlap, Tenn., for plaintiffs.

Harry Weill, Chattanooga, Tenn., for Sears, Roebuck & Co.

Miriam Teitelbaum, New York City, for Saw Mill & Beacon.

## MEMORANDUM

EDGAR, District Judge.

Plaintiff Mary Ann Seals was injured on September 3, 1985, due to the alleged malfunction of an exercise bicycle on which she was riding. She brings this negligence/products liability action, with her husband, against defendant Sears, Roebuck & Co. ("Sears"), the seller of the cycle, defendant Beacon Enterprise, Inc. ("Beacon"), the distributor of the cycle, and defendant Saw Mill Industries, Inc. ("Saw Mill"), the manufacturer of the cycle. Defendants Saw Mill and Beacon have filed voluntary Chapter 7 bankruptcy petitions and plaintiffs' claim against them is, consequently, stayed.[1]

The matter presently before this Court is plaintiffs' motion for partial summary

---

1. Defendants Saw Mill and Beacon filed these voluntary petitions on June 5, 1986, after this action was commenced on February 26, 1986, but before these two defendants were added by amended complaint on July 14, 1986. Prior to that time, plaintiffs' action was directed solely against defendant Sears.

judgment. Defendant Sears opposes the motion. The motion involves interpretation of T.C.A. § 29–28–106(b) of the Tennessee Products Liability Act of 1978, T.C.A. §§ 29–28–101 *et seq.* (hereinafter "the Act"), which provides in pertinent part:

(b) No product liability action as defined in § 29–28–102(6), when based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

Plaintiffs ask this Court for a determination that the manufacturer of the allegedly defective cycle, Saw Mill, is insolvent, in order that they may pursue their strict liability claim against defendant Sears.

It is readily apparent from the language of the statute above, however, that there is some question as to whether this Court is even empowered to make such a determination. The statute says that no action based in strict liability against a seller "shall be *commenced*" unless the manufacturer of the product *"has been* [past tense] judicially declared insolvent." Read strictly as written, this statute appears to require a prior judicial declaration of insolvency as a condition precedent to an action being brought against a seller. In other words, this language might be construed to be jurisdictional.[2] This case was filed against defendant Sears prior to defendant Saw Mill's voluntary filing of a bankruptcy petition. Moreover, as defendant Sears contends, it is open to dispute whether the mere filing of a bankruptcy petition is suf-

ficient to demonstrate insolvency or satisfy the statute.

In Tennessee, "the most basic and fundamental rule of statutory construction" is that "courts are restricted to the natural and ordinary meaning of the language used by the Legislature within the four corners of the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Austin v. Memphis Publishing Co.,* 655 S.W.2d 146, 148 (Tenn.1983). If a statute is plain and explicit in its meaning, the duty of the Court is to apply it as written. *Miller v. Childress,* 21 Tenn. (2 Hum) 319, 321–22 (1841). There is no room for interpretation of an unambiguous statute. Where, however, a statute is ambiguous and the purpose behind the statute may not be gleaned solely from the wording of the statute itself, a court may resort to the debates in the general assembly to determine the legislative intent. *City of Oak Ridge v. Roane County,* 563 S.W.2d 895, 899 (Tenn.1978).

The first question for the Court, then, is to determine whether the statute is ambiguous. The Court determines that it is. The phrase that no strict liability action "shall be commenced or maintained" except in certain prescribed conditions is inherently ambiguous. The proscription against *maintaining* a lawsuit is mere surplusage if the conditions are a jurisdictional prerequisite to commencement of the lawsuit. Further, the phrase "judicially declared insolvent" is far from self-explanatory. As explained below, there are numerous possible situations where although a manufacturer is indisputably insolvent, it will never have been judicially declared as such.

It appears from the statutory language and its meager legislative history that the statute has two competing goals, the first to protect a seller from a products liability action based on strict liability and the second, to ensure that an injured consumer may maintain a strict liability action against whomever is most likely to compensate him for his injuries.

---

**2.** Defendant Sears' failure to raise the statute as a defense suggests that it perceives the statute to be jurisdictional and, consequently, preserved for appeal whether or not raised in the trial court.

The Court has carefully examined the legislative history of this statute to determine the legislative intent. As originally proposed, the Act was drafted to completely eliminate the seller strict liability set out in the *Restatement (Second) of Torts* § 402(a). Senate Floor Debate on Senate Bill No. 2188, Tennessee General Assembly. 90th G.A., 1st Sess. (1978). Senate (Feb. 23, 1978, tape Nos. 55 through 58, transcript at 46) (statement of Sen. Blank).[3] The complete abrogation of strict liability against sellers was met with considerable hostility by numerous members of the Tennessee Senate. *Id.* Senate (Feb. 23, 1978, tape Nos. 55 through 58, transcript at 27) (statement of Dean Wade); Senate (March 1, 1978, tape Nos. 67 through 70, transcript at 53–56) (statement of Senator White); Senate (March 1, 1978, tape Nos. 67 through 70, transcript at 68) (statement of Sen. Ashe). An amendment was twice offered to add an exception to the elimination of seller strict liability where the manufacturer was not amenable to service of process or was insolvent. One of the principal sponsors of the Act, Senator Blank, opposed this amendment and characterized it as follows:

> [What this amendment is saying is] you don't get to sue the seller if the manufacturer's got money but if the manufacturer doesn't have money then you sue the seller.... basically what we're doing here is kinda like saying you can sue so and so if the other fellow doesn't have the money ... I don't think that this particular amendment makes much sense or much logic because really all you're saying is, folks if you can't get the money off one, we're gonna let you have a shot at the other one....

*Id.* Senate (March 1, 1978, tape Nos. 67 through 70, transcript at 69) (statement of Sen. Blank). A proponent of the amendment, Senator White, indicated that it was designed to protect consumers and utilized a hypothetical that ironically involved defendant Sears:

> All you're saying is if the child in Tennessee or the citizen of Tennessee is injured by a product manufactured by somebody, no matter where they are, well ... [n]o matter where the manufacturer is, if he's insolvent, and manufacturers go out of business every day, people go in business and they don't make it, if Sears & Roebuck buys a product from a manufacturer that is bankrupt, why should you tell the person injured in Tennessee that you can't recover, you can't recover because that manufacturer is no longer solvent. Why shouldn't Sears & Roebuck in a case like that be liable, strictly liable for putting that defective product on the market[?] I think it's a very reasonable amendment.... *Id.* at 70.

The initial votes on this amendment failed. *Id.* (transcript at 58, 71). The next day, however, a "similar but not identical" form of the amendment passed by the Tennessee Senate. *Id.* Senate (March 2, 1978, tape Nos. 71 through 74, transcript at 122–23).

The thrust of the legislative history seems to indicate that the "insolvency" exception to seller immunity from strict liability is motivated by a desire to insure that an injured consumer can look to the seller if he cannot collect a judgment from the manufacturer. This purpose would seem to imply that the trial court is empowered to make a determination that the manufacturer is insolvent or otherwise judgment proof.

There is only one reported Tennessee case in the almost ten years since the Act was passed that addresses the language of this section 29–28–106(b).[4] In *Baker v.*

---

**3.** See Tennessee General Assembly. Official Proceedings, 1957—. Nashville, Tennessee. State Library and Archives.

**4.** Substantially identical language is found in the Tennessee Motor Vehicle "Lemon" Law, T.C.A. §§ 55–24–201 *et seq.* Specifically, T.C.A. § 55–24–211 provides that "[n]o action shall be commenced or maintained ... against the seller or lessor of a motor vehicle ... unless the manufacturer has been judicially declared insolvent." This statute took effect January 1, 1987, and the Court has been unable to find any cases interpreting it.

*Promark Products West, Inc.,* 692 S.W.2d 844 (Tenn.1985), a plaintiff who had suffered severe leg injuries while operating a stump grinder brought a products liability action against the manufacturer, the lessor and the distributor of the grinder. The plaintiff nonsuited the manufacturer and the trial court granted summary judgment for the nonmanufacturer defendants on plaintiff's strict liability claims against the nonmanufacturer defendants. The Tennessee Court of Appeals affirmed the judgment of the trial court on the grounds that there was nothing in the record to indicate that the manufacturer of the product had been judicially declared insolvent or was not subject to service of process as required by T.C.A. § 29–28–106(b). The Tennessee Supreme Court remanded the case to the trial court to give plaintiff "the opportunity to present other evidence to establish the insolvency" of the manufacturer. 692 S.W.2d at 849.[5]

This language standing alone seems to indicate that the Tennessee Supreme Court felt that a trial court could make the determination of insolvency. However, the very next sentence of the opinion states that "if it is successfully established that [the manufacturer] has in fact *been judicially declared insolvent,* then plaintiff shall be permitted to pursue his strict liability action against [the nonmanufacturing defendants]." 692 S.W.2d at 849 (Emphasis added). This second sentence might possibly indicate that the judicial declaration of insolvency must have preceded the commencement of the case against the nonmanufacturing defendants. In other words, this language could be construed to mean that the trial court cannot determine whether the manufacturer was insolvent, but only whether another court had said so. However, the final paragraph of the Ten-

nessee Supreme Court's decision appears to intimate a contrary interpretation:

> With regard to the strict liability of both [nonmanufacturing] Defendants, the cause is remanded to the trial court for *a finding on the issue of the insolvency* of [the manufacturer]. *If [the manufacturer] is found to be insolvent,* then a cause of action in strict liability will lie against both [nonmanufacturing defendants]. *Id.* at 850. (Emphasis added).

This Court construes the *Promark* decision, taken as a whole, as holding that the trial court has the authority to make a judicial declaration of insolvency which would activate the possibility of strict liability for a seller under T.C.A. § 29–28–106(b).

We are left, however, with determining what the statute means by the terminology, "judicially declared insolvent." The mere filing of a bankruptcy petition does not always mean that the bankrupt is insolvent, nor does the failure to file a bankruptcy petition mean that one is solvent. Manufacturers go out of business frequently and in such cases there is no mechanism for insolvency to be judicially declared. Moreover, even where a manufacturer is in bankruptcy, a judicial declaration of insolvency may or may not occur. A manufacturer may file a bankruptcy case without being insolvent, and the bankruptcy court need not declare it insolvent. Whether a debtor will be in bankruptcy depends on a finding of insolvency only when creditors file an involuntary petition against the debtor, and the debtor contests. *See* 11 U.S.C. §§ 301, 303(h)(1). An additional problem here is that the Tennessee statute provides no guidance as to what definition or degree of insolvency is required.

---

**5.** In his appeal to the Supreme Court, plaintiff had filed a motion to consider post-judgment facts pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure as to the insolvency issue. Plaintiff contended that because the plaintiff corporation of the manufacturer and the president of the parent corporation had taken bankruptcy, and because the counsel representing the manufacturer had requested to withdraw from further participation in the case due to nonpayment, that the manufacturer was now insolvent and the case against the nonmanufacturing defendants could proceed. The Tennessee Supreme Court determined, however, that plaintiff's post-judgment facts were "insufficient as a matter of law to establish the insolvency [of the manufacturer]." The fact that the Court was willing to consider the facts, however, argues in favor of a less rigid, non-jurisdictional approach to the statute.

Since this question deals directly with legislative policy that is uniquely Tennessee's, it would be preferable for it to be resolved in the Tennessee courts. If it were possible, the Court would certify the question to the Supreme Court of Tennessee for decision, since certification of state law questions to state courts provides the most direct and feasible means of clarifying unsettled areas of state law. The Supreme Court has recognized the value of certification and noted that it can "save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Unfortunately, Tennessee, unlike a majority of the states,[6] has not enacted a certification procedure. Consequently, this Court cannot request that the Tennessee Supreme Court decide an issue no matter how important the question nor how far reaching its implications for Tennessee jurisprudence.

Therefore, this Court must make the decision itself. This Court may not abstain from deciding an issue of state law merely because it is difficult and because the state courts have not spoken. *See* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4246 (1988). "In the absence of a state court ruling, our duty [as federal courts sitting in diversity] is tolerably clear. It is to decide, not avoid, the question." *Daily v. Parker*, 152 F.2d 174, 177 (7th Cir.1945); *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (explaining policies and concerns underlying *Erie* doctrine). A federal court faced with an unsettled question of state law must determine the most likely disposition of the question if it were before the state's highest court. 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 (1982 and supp. 1987). To make this determination, "the federal court must ascertain from all available data what the state law is and apply it." *Angelotta v. American Broadcasting Corp.*, 820 F.2d 806, 807 (6th Cir.1987) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)). In predicting how the Tennessee Supreme Court would decide the issue, this Court may consider "all available legal sources," including state Supreme Court dicta, restatements of law, law review commentaries,[7] and the "majority rule" among other states, particularly those states that share a similar doctrinal view. *Id.* at 807; *Bailey* at 604; *see also* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507.

As already indicated, the legislative history of section 29–28–106(b), although not entirely enlightening, indicates that a primary purpose of the statute is to insure that where the manufacturer is insolvent, an injured party may look to a solvent seller for his losses, and this purpose implies that the trial court is empowered to determine manufacturer insolvency. This interpretation is arguably supported by, and is not at odds with, the only Tennessee Supreme Court case interpreting the statute. This interpretation is supported by the statutes enacted by other states that have sought to restrict seller liability to those cases where a judgment could not be enforced against a manufacturer. The equivalent statutes in Idaho,[8] Kansas,[9] Ohio,[10] Minnesota,[11] and Washington,[12] as well as the most recent version of the Model Uniform Products Liability Act ("MU-

---

**6.** Thirty-six states allow federal courts to certify questions to state courts. *See* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4248, n. 30 (1988); *see also* Alexander, THE LAW/FACT DISTINCTION AND UNSETTLED STATE LAW IN THE FEDERAL COURTS, 64 Texas L.Rev. 157 (1985) (text in WESTLAW).

**7.** The only law review commentary on the Act, NOTE, THE TENNESSEE PRODUCTS LIABILITY ACT, 9 Mem.St.U.L.Rev. 105 (1978), merely notes the potential obstacles to plaintiffs contained in section 106(b).

**8.** Idaho Code § 6–1407(1).

**9.** Kan.Stat.Ann. 60–3306.

**10.** O.R.C. § 2305.33(B).

**11.** Minn.Stat. § 544.41 (1980).

**12.** Wash.Rev.Code § 7.72.040(2).

PLA"),[13] and the various products liability bills that have been introduced in the United States Congress,[14] all empower the trial court to determine if a manufacturer is insolvent. A survey of relevant statutes is contained in an appendix to this memorandum.

■ The Court determines that the "commenced or maintained" language means that a plaintiff seeking to pursue a strict liability claim against a defendant seller must, where insolvency is an issue allege that the manufacturer either (1) has been judicially declared insolvent, or (2) is insolvent. This means that, if the matter is contested, the trial court must determine whether either of these conditions has been satisfied. If the trial court cannot make that determination, the case against the defendant seller must be dismissed. This interpretation makes some sense of the "commenced or maintained" language of the statute and also protects sellers from the costs of defending a strict liability suit, except in cases where the manufacturer is in fact insolvent. It also insures that injured consumers may be compensated without requiring them to jump through procedural hoops in acquiring a judicial declaration of insolvency from some other court before filing suit against a defendant seller.[15] Consistent with the legislative purpose to provide an injured plaintiff with a meaningful remedy, it is also clear that the "commenced or maintained" language does not mean that the manufacturer must be insolvent on the fortuitous date that the complaint is filed. What is important is that before a seller may be subjected to liability, it must be determined that the manufacturer is insolvent.

This approach is also that suggested by the similar provision of the Model Uniform Products Liability Act ("MUPLA") which is "derived in part from Tennessee law." Official Analysis to the MUPLA, 3 L. Frumer and M. Friedman § 9.04, at 9–138 (1988). Section 105(c) of the MUPLA provides that:

(C) A product seller, other than a manufacturer, is also subject to the liability of manufacturer under Section 104 if:

(1) The manufacturer is not subject to service of process under the laws of the claimant's domicile; or

(2) The manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as they become due in the ordinary course of business; or

(3) The court determines that it is highly probable that the claimant would be unable to enforce a judgment against the product manufacturer.

The Official Analysis to this section, set out in 3 L. Frumer & M. Friedman, *Products Liability* § 9.04, at 9–138 (1988), explains that:

If the manufacturer is not subject to service of process or has judicially been declared insolvent, or if a court determines that it would be highly likely that the claimant would be unable to enforce a judgment against the product manufacturer, the retailer, wholesaler, or distributor has the same strict liability obligations as a manufacturer.

. . . .

Procedurally, if the claimant commences an action against the retailer ... based upon a theory other than the retailer's ... own negligence [such as strict liability] ... the defendant would make a motion for dismissal. At that time, the claimant must show that the manufacturer is [not subject to service or unable to satisfy a judgment]. . . .

. . . .

In order for section 105 to operate fairly toward claimants as well as nonmanufacturer product sellers, it is suggested that:

(1) The non-manufacturer product seller be treated as a party for the purposes of discovery ... and

---

**13.** The full text of the MUPLA is set out in 3 L. Frumer and M. Friedman, *Products Liability* § 9.04 (1988).

**14.** *See, e.g.,* S. 666, 100th Cong., 1st Sess. (1987); H.R. 1115, 100th Cong., 1st Sess. (1987).

**15.** A potential plaintiff might be able to bring a declaratory judgment action pursuant to T.C.A. §§ 29–14–101 *et seq.* to have the manufacturer declared "insolvent," presuming that the manufacturer is amenable to service of process.

(2) The statute of limitations vis-a-vis the non-manufacturer product seller be deemed to have tolled in case the claimant is unable to enforce his or her product liability judgment against the manufacturer.

What definition of insolvency is embodied in T.C.A. § 29–28–106(b)? There are many definitions of "insolvency." As already indicated, a bankruptcy court only makes a determination of insolvency if the proceeding is involuntary. *Cf.* 11 U.S.C. §§ 301, 303(h)(1). In a contested involuntary case, a bankruptcy court may order relief only if "the debtor is generally not paying such debtor's debts as such debts become due...." 11 U.S.C. § 303(h)(1). This test is a variation of the equity insolvency test that "has been in equity jurisprudence for hundreds of years." Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

In some adversary proceedings in bankruptcy cases the court may find insolvency under the "balance sheet" test. 11 U.S.C. §§ 101(31), 547(b)(3) and 548(a)(2). A type of balance sheet test is utilized by the Tennessee Legislature in the Uniform Fraudulent Conveyance Act in Tennessee. T.C.A. § 66–3–302 provides:

> Test for insolvency.—A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Although this statute appears to adopt a less flexible, balance-sheet determination of insolvency, Tennessee courts have generally interpreted the statute flexibly in a manner similar to the equity insolvency test described above, *i.e.*, whether the person or corporation is able to meet its obligations as they come due in the ordinary course of business. *See, e.g., In re Knox Kreations, Inc.*, 474 F.Supp. 567, 571 (E.D.Tenn.1979), *aff'd in part, rev'd in part*, 656 F.2d 230 (6th Cir.1981); *United States v. Kerr*, 470 F.Supp. 278, 282 n. 10 (E.D.Tenn.1978); *State v. Caldwell*, 21 Tenn.App. 396, 400, 111 S.W.2d 377 (Tenn.App.1937).

Yet another definition of "insolvency" is found in Tennessee's Uniform Insurers Liquidation Act, T.C.A. §§ 56–9–101 *et seq.* T.C.A. § 56–9–102(g) defines an insolvent insurer as one "not possessed of assets at least equal to all liabilities and required reserves...."

Finally, the test used by most of the similar state and model statutes mentioned above, and set out in the appendix, is inability to satisfy a judgment.

■ It is not, however, necessary in this case to conclusively define "insolvency" for the purpose of the Tennessee Products Liability Act. Plaintiffs have submitted the affidavit of Miriam Tittelbaum, the trustee in bankruptcy for defendant Saw Mill, to the effect that defendant Saw Mill has liabilities of $2,521,938.98 and assets of $21,572.26, according to Saw Mill's bankruptcy petition, and portions of the deposition testimony of Leonard Weiss to the effect that the figures in the petition are correct, that defendant Saw Mill is unable to meet its obligations as they come due, and that defendant Saw Mill's liabilities outweigh its assets. Defendant Sears has not contradicted the asset/liabilities figures, and there is consequently no reason for the Court to dispute them. The Court has no difficulty on these facts in ruling that defendant Saw Mill is "insolvent" under the Tennessee Products Liability Act. Liabilities exceeding assets by more than a hundred-fold and inability to pay current debts as they accrue is insolvency under any reasonable definition of the term. Plaintiffs have certainly demonstrated defendant Saw Mill's inability to satisfy a judgment against it in this cause.

■ The question remains whether plaintiffs are entitled to the requested partial summary judgment. Although the facts now indicate that defendant Saw Mill is "insolvent" under the Tennessee Products Liability Act, as described above, it is also clear that plaintiffs began this action against defendant Sears before defendant Saw Mill filed its voluntary bankruptcy petition and that plaintiffs' original and amended complaints fail to include the allegations of manufacturer insolvency that this Court has determined are required under the Act before a plaintiff may proceed

against a seller. The Court determines that plaintiffs are entitled to proceed. Although plaintiffs' complaint was insufficient when initiated, defendant Sears' failure to object combined with subsequent events have cured the deficiency. Dismissal under the peculiar circumstances of this case would be inappropriate, since any dismissal would be without prejudice and it is clear that plaintiffs could timely refile to include the required averments. Plaintiffs are also free to amend their complaint under Fed.R.Civ.P. 15 to include the necessary allegations. In effect, the plaintiffs in this case have made the necessary insolvency allegations by filing their motion for partial summary judgment. Consequently, an order will enter GRANTING the plaintiffs' motion for partial summary judgment.

The Court determines that T.C.A. § 29–28–106(b) authorizes a trial court to determine whether a defendant manufacturer is "insolvent" for purposes of proceeding against a defendant seller on a strict liability cause of action; that defendant Saw Mill Industries, Inc. is "insolvent" under that section; that the plaintiffs may proceed against Sears whether or not Saw Mill was insolvent at the time suit was commenced; and that plaintiffs may, consequently, pursue their strict liability claim against defendant Sears, Roebuck & Co.

### APPENDIX

The majority of states appear to have adopted by judicial decision the seller strict liability standards found in section 402A of the *Restatement (Second) of Torts*. Nebraska and South Dakota have eliminated seller strict liability altogether. *See* Neb. Rev.Stat. § 25–21, 181; S.D. Codified Laws § 20–9–9. Colorado and Kentucky allow strict liability claims against a "principal distributor or seller" if jurisdiction is not available over the manufacturer, but do not recognize the "insolvency" exception. *See* Colorado Rev.Stat. § 13–21–402(2); Ky. Rev.Stat. § 411.340. The remaining states follow the approach taken by Tennessee in allowing an injured plaintiff to proceed in strict liability against a seller if a manufacturer is not subject to jurisdiction or is insolvent. Most of these states, *e.g.*, Kansas,[1] Ohio,[2] Minnesota[3] and Washington,[4] expressly allow the trial court to determine whether a manufacturer is insolvent. This is also the approach taken by the Model Uniform Products Liability Act[5] and the various proposed federal products liability acts.[6] Only North Carolina has statutory language substantially similar to that found in the Tennessee statute.[7] The relevant provisions of the various statutes follow.

#### Idaho

Idaho Code § 6–1307(4) provides:

(4) A product seller, other than a manufacturer, is ... subject to the liability of manufacturer [including strict liability] if:

(a) the manufacturer is not subject to service of process under the laws of the claimant's domicile; or

(b) the manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as

---

1. Section 6 of the Kansas Product Liability Act, Kan.Stat.Ann. § 60–3306.

2. O.R.C. § 2305.33(B).

3. Minn.Stat. § 544.41 (1980).

4. Section 5 of the Washington Products Liability Act, Wash.Rev.Code § 7.72.040(2).

5. The full text of the MUPLA, and an illuminating official analysis is set out in 3 L. Frumer and M. Friedman, *Products Liability* § 9.04 (1988).

6. In response to the "less than overwhelming enthusiasm" received by the MUPLA after it was published in 1979, "a serious push began in 1982 for federal legislation" on products liability. *See* 3 L. Frumer & M. Friedman at § 9.03[1]. A bill first proposed by Senator Robert Kasten as S. 2631 in the 97th Session in October 1982 has been before the Senate in numerous incarnations since. The most recent version, S. 666, 100th Cong., 1st Sess. (1987), is set out in 3 L. Frumer & M. Friedman § 9.10[2][a], at 9–464 (1988). Numerous similar proposals have also been presented to the House. One such bill, H.R. 1115, 100th Cong., 1st Sess., is set out in *Id.* § 9.10[1], at 9–449 (1988).

7. N.C.Stat. § 99B–2. The Court has been unable to find any case interpreting the applicable language of the North Carolina statute.

they become due in the ordinary course of business; or

(c) the court outside the presence of a jury determines that it is highly probable that the claimant would be unable to enforce a judgment against the product manufacturer.

### Kansas

Kan.Stat.Ann. § 60–3306 provides:

A product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes that: (a) Such seller had no knowledge of the defect;

(b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

(c) the seller was not a manufacturer of the defective product or product component;

(d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

(e) any judgment against the manufacturer obtained by the person making the product liability claims would be reasonably certain of being satisfied.

### Ohio

O.R.C. § 2305.33(B) provides that a seller may not be liable in an action based upon strict tort liability if the seller proves, *inter alia,* that:

The manufacturer of the allegedly defective product has neither filed for bankruptcy prior to the commencement of or during the pendency of the action nor been judicially declared insolvent due to an inability to pay its debts as they become due in the ordinary course of business; ....

O.R.C. § 2305.33(B)(2)(b).

### Minnesota

Minn.Stat. § 544.41 (1980) allows a strict liability seller defendant to obtain dismissal by filing an affidavit identifying the manufacturer of the product, but the dismissal may be vacated if the manufacturer is defunct, is not subject to service, or "the manufacturer is unable to satisfy any judgment as determined by the court."

### North Carolina

N.C.Stat. § 99B–2 provides:

*Liability of seller.*—(a) No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession; provided, that the provisions of this section shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent.

### Washington

Wash.Rev.Code § 7.72.040(2) provides, in pertinent part:

A product seller, other than a manufacturer, shall have the liability of a manufacturer to the claimant if:

a.  No solvent manufacturer who would be liable to the claimant is subject to service of process under the laws of the claimant's domicile or the state of Washington; or

b.  The court determines that it is highly probable that the claimant would be unable to enforce a judgment against any manufacturer....

### Model Uniform Products Liability Act

Section 105(c) of the MUPLA provides that:

(C) A product seller, other than a manufacturer, is also subject to the liability of manufacturer under Section 104 if:

(1) The manufacturer is not subject to service of process under the laws of the claimant's domicile; or

(2) The manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as they become due in the ordinary course of business; or

(3) The court determines that it is highly probable that the claimant would be unable to enforce a judgment against the product manufacturer.

### Proposed Federal Legislation

A bill first proposed by Senator Robert Kasten as S. 2631 in the 97th Session in October 1982 has been before the Senate in numerous incarnations since. The most recent version, S. 666, 100th Cong., 1st Sess. (1987), is set out in 3 L. Frumer & M. Friedman at § 9.10[2][a](1988). Section 302 of the Kasten Bill provides:

(c) A product seller shall be treated as the manufacturer of a product and shall be liable for harm to the claimant caused by a product as if it were the manufacturer of the product if—

(1) the manufacturer is not subject to service of process under the laws of any State in which the action might have been brought; or

(2) the court determines that the claimant would be unable to enforce a judgment against the manufacturer.

Numerous similar proposals have also been presented to the House. A recent bill proposed by Congressmen Richardson and Luken, H.R. 1115, 100th Cong., 1st Sess., is set out in *Id.* at § 9.10[1](1988). Section 205 of the House Bill provides:

(a) A product seller shall be treated as the manufacturer of a product sold by the product seller and shall be liable for harm to the claimant caused by such product as if the product seller were the manufacturer of such product if—

(1) the manufacturer is not subject to service of process under the laws of any State in which the action might have been brought, or

(2) the court determines that the claimant would be unable to enforce a judgment against the manufacturer.