UNITED STATES of America, Plaintiff,

v.

Fred A. KERR et al., Defendants.

No. CIV-2-77-110.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Oct. 31, 1978.

John Carey, U. S. Atty., Knoxville, Tenn.,
Guy W. Blackwell, Jr., Asst. U. S. Atty.,
Greeneville, Tenn., and Joe Vaulx Crockett,
III, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Wendal D. Jackson, Slaughter, Jackson &
Pectol, Bristol, Tenn., Walter A. Curtis,
Elizabethton, Tenn., Luther H. Icenhour,
Jr., Bristol, Tenn. and John S. McLellan,
III, McLellan & DeVault, Kingsport, Tenn.,
for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

The sole remaining contested issue in this
lawsuit is whether 6 conveyances of real
estate by third-parties to the defendants
Mr. and Mrs. Kerr, as tenants by the entirety, should be set aside as fraudulent of the
national sovereign in the matter of Mr.
Kerr's delinquency in reporting timely and

paying his federal income taxes for certain
years. A bench trial was conducted on
October 2, 1978. This Court has jurisdiction
of the subject matter and of the parties. 28
U.S.C. §§ 1340, 1345, 26 U.S.C. §§ 7402,
7403.

Mr. Kerr has engaged in the business of
owning and operating amusement devices
for some 45 years. He and Mrs. Kerr have
been married for the most recent 43 of
those years.

Mr. Kerr neglected to pay any federal
income taxes at all during those 45 years
until an informant "tipped" the Internal
Revenue Service (IRS) concerning his continuing illegality. He testified that he commenced his business operations with but
little capital and " *   *   * plowed all profits  *   *   *" back into his business operation. He undertook to explain his failure to
report his income and pay taxes due thereon, by saying he was under the initial impression that, unless he " *   *   * made
*   *   *" more than $600 annually from his
operations, he was not required to make
any report of his income; that, when he
eventually discovered otherwise, he was
" *   *   * scared  *   *   *" to file any federal tax returns.[1] This fear provided no
justification for his continued inaction.
*Stoltzfus v. United States,* C.A.3d (1968),
398 F.2d 1002, 1005–1006[5], certiorari denied (1969), 393 U.S. 1020, 89 S.Ct. 627, 21
L.Ed.2d 565.

Mr. Kerr operated his business under the
name of Kerr Music Company. He commingled his commercial funds with his personal funds and kept no formal business
records. He, at all times, and he and Mrs.
Kerr for the past 43 years, " *   *   * lived
out-of-the-business  *   *   *" and profited
from it far beyond that. Contributions
were also made from the funds acquired by
Mr. and Mrs. Kerr to the capital of DeLuxe
Vendors, operated by their son, which offered for sale through vending devices cigarettes, confections, coffee, etc.

---

1. Mr. Kerr was especially frightened of the consequences of his unlawful conduct when he
heard that another amusement-device operator

had been " *   *   * sold-out  *   *   *" by the
government in another state to satisfy his unpaid federal taxes.

Mrs. Kerr worked in this amusement-device business from the beginning of her marriage to Mr. Kerr,[2] in addition to managing their home and family affairs. She not only assisted with the paper-work of that operation but engaged also in manual jobs such as helping load and unload pinball and other machines from their trucks and drove the truck and accompanied the Kerr's sons to " * * * rob * * * " the funds from the devices located in places attracting public traffic.

Neither Mr. Kerr nor Mrs. Kerr received salaries, wages or other compensation for their personal services to their business operation. When either of them required funds for any family or personal use, these were withdrawn from the business account in a bank. When they acquired any type of asset, it was deemed by them to belong to them jointly;[3] title to all real estate they acquired was taken by them as tenants by the entirety. When an indebtedness was created, both Mr. and Mrs. Kerr assumed its repayment.

In 1940 or 1941, the Kerrs purchased, as tenants by the entirety, a parcel of real estate. In 1959 they purchased a farm and took title to it as tenants by the entirety. That same, year, as such tenants, they purchased an apartment building. In 1962 and 1964, as tenants by the entirety, Mr. and Mrs. Kerr purchased contiguous commercial lots in Elizabethton, Tennessee, and, in the latter year, constructed thereon a building which has served since as a base of operations of both Kerr Music Company and DeLuxe Vendors. The following year, as tenants by the entirety, Mr. and Mrs. Kerr bought an unimproved lot in a subdivision; and the same year, as such tenants, they purchased their present residential property, as well as a lot on which was located a restaurant or salesoffice structure. During this period, they made an unsecured loan of $21,000 to Mr. Ben A. Paduch and took no promissory note or other indicia of indebtedness from him.

Mr. Kerr pleaded guilty in 1970 to charges that he had failed wilfully to file federal income tax returns for the respective tax years of 1963 and 1966.[4] As to those years, Mr. and Mrs. Kerr elected to file belated returns jointly and to pay the taxes, interest and penalty thereon. For this and other purposes, Mr. and Mrs. Kerr borrowed jointly $50,000 and hypothecated their joint property as security for its repayment. The Kerrs have not elected to file joint federal income tax returns for any of the other tax years involved in this litigation, viz., 1956–1959, inclusive, 1961, 1964, 1965.[5]

The plaintiff contends that Mr. Kerr's maximum interest as a tenant by the entirety of the property jointly held with his wife has a value of 20% of its fair cash market value.[6] It contends furthermore that Mr. Kerr has escaped paying substantial amounts of income taxes to its IRS over a great many years by the device of having all his property conveyed to his wife and himself as tenants by the entirety; that he has no other property subject to levy from which it may realize unpaid taxes, penalties and interest; that there is no ready market for the sale and purchase of survivorship

2.  Mr. Kerr testified to his belief that Mrs. Kerr was entitled to one-half of " * * * all I got. * * * "

3.  Mr. Kerr emphasized in his testimony that Mrs. Kerr was working " * * * with * * * " me, not " * * * for * * * " me.

4.  The Court overruled Mr. Kerr's objection to this evidence at trial but has reconsidered upon more mature judgment and hereby SUSTAINS such objection in light of the fact that Mr. Kerr has withdrawn his contention that the assessment of his tax liability is incorrect. Cf. Kreps v. C. I. R., C.A.2d (1965), 351 F.2d 1, 6[6], and United States v. Wainer, C.A.7th (1954), 211

F.2d 669, 671[2]. The conviction is mentioned herein at all only as it is of assistance in establishing a time-frame for the election of Mr. and Mrs. Kerr to file joint tax returns.

5.  The limitation of 26 U.S.C. § 6502 was enlarged by Mr. Kerr's submitting an offer in compromise of the tax liabilities for those of these years which are more than 6 years before the commencement of this action.

6.  The Court does not accredit the testimony to this effect and gives it no weight, because this estimate is grossly overestimated.

interests in joint tenancy estates; and that Mr. Kerr's causing his real assets to be conveyed to him and his wife in such a manner worked a fraud on the government.

The parties are in agreement (as is this Court) that the question of whether the foregoing conveyances were fraudulent as to the national government is controlled by Tennessee law. Thereunder, to justify this Court in finding such conveyances fraudulent and setting them aside, this Court must have found either: (1) that Mr. Kerr caused such conveyances to be made to Mrs. Kerr and himself with actual intent to delay, hinder, or defraud the national government as one of his creditors (in which event such conveyances are void), T.C.A. §§ 64–301, 64–315; or (2) that each of the foregoing respective conveyances in 1959, 1962, 1964 and 1966 was fraudulent because it was caused to be made by Mr. Kerr at a time when he was insolvent and was without fair consideration,[7] T.C.A. §§ 64–309, 64–311, 64–312. The causing of the creation of estates of tenancies by the entirety is within the reach of the Uniform Fraudulent Conveyance Act, T.C.A. §§ 64–308, et seq. *Cf. Taylor v. Kaufhold* (1954), 379 Pa. 191, 199, 108 A.2d 713.

Tennessee has 2 groups of statutes dealing with allegedly fraudulent conveyances and devises, all codified as T.C.A., title 64, chapter 3. The earlier statutes relating thereto appear at T.C.A. §§ 64–301–64–307, and the uniform laws thereon appear at T.C.A. §§ 64–308–64–321. The latter merely enlarged upon the former. *Bowery v. Vines* (1941), 178 Tenn. 98, 103, 156 S.W.2d 395.

■ T.C.A. § 64–315, *supra,* distinguishes between fraudulent conveyances made with " * * * actual intent * * * to hinder, delay, or defraud * * * either present or future creditors * * * " and

fraudulent conveyances made with " * * * intent presumed in law * * * to hinder, delay, or defraud * * * either present or future creditors. * * * " In the former instance, actual intent *to* defraud must have been shown by a preponderance of the evidence. *James v. Joseph* (1928), 156 Tenn. 417, 424–426(4), 1 S.W.2d 1017.[8]

The late Mr. Justice R. L. Caruthers long ago defined the statutory words, " * * * hinder, delay, or defraud, * * * " as being in their legal or technical, not their literal, sense; he observed that the " * * * statute only refers to an improper or illegal hinderance or delay—not such as is reasonable and fair in the exercise of the well-established right to prefer creditors. * * * " *Hefner v. Metcalf* (1858), 38 Tenn. 577, 580. Of course, we have no factual situation herein involving preferential treatment of creditors, but a federal judge, in instructing a jury, once explained the meaning of these words in more congruity with our present situation. He stated:

* * * By hindering and delaying creditors in the collection of their debts is meant the doing of an * * * act which causes or presents an obstacle in the collection of the debt by a creditor. The act done by the debtor may not defraud the creditor in fact, and yet be fraudulent in law, because it hinders and delays creditors in the collection of their debts. Thus, for instance, a debtor may have property more than sufficient to pay all his debts, yet if he puts his property out of his hands so that it cannot be reached by the ordinary process of law, it is hindering and delaying in the eyes of the law, and a legal fraud. Such hindering and delaying of creditors in the collection of their debts, the law denounces and treats as a fraud. * * *

---

7. As indicated, *infra,* this Court is led toward the conclusion, which would constitute mere dictum herein, that Mr. and Mrs. Kerr may have constituted themselves a partnership, so that the "fair consideration" concept, with reference to Mrs. Kerr's becoming a tenant by the entirety in the transactions involved, is not implicated, in the Court's mind.

8. It is only where the creditor presents evidence to create a suspicion that the conveyance involved was fraudulent that the allegedly fraudulent conveyor or conveyee must show freedom from the alleged fraud. *James v. Joseph, supra,* 156 Tenn. at 424(3), 1 S.W.2d 1017.

*Kellog v. Richardson*, C.C.W.D.Mo. (1883), 19 F. 70, 71–72. This is precisely what the national sovereign claims Mr. Kerr has done here: having put his real estate partially out of his hands, so that it cannot be reached by the ordinary process of law relating to the collection of delinquent taxes and assessments, at times when Mr. Kerr's real estate is more than adequate to pay those taxes and assessments. He does appear to have done so. There is no question that the plaintiff was a creditor of Mr. Kerr; his taxes were due and owing the plaintiff on each date on which he was due to file a federal income tax return. *United States v. Adams Bldg. Co., Inc.*, C.A.6th (1976), 531 F.2d 342, 343 fn. 2[2].

■ The crucial question, accordingly, is whether Mr. Kerr did this with an actual intent to delay, hinder or defraud the federal government as his creditor. This Court FINDS that it has not been shown by a preponderance of the evidence that Mr. Kerr entertained any such intent at the time of the conveyances at issue.

When Mr. Kerr negotiated a transaction for the purchase of any real estate throughout the protracted course of his marriage, in each instance, his attorney made the decision that Mr. and Mrs. Kerr would take title to such real estate as tenants by the entirety. This was because Mr. Kerr felt that his wife and codefendant Mrs. Kerr was an equal partner with him in all aspects of his business, as well as his home and family, transactions; and that " * * * the least he could do * * * " was to join her name with his in all the married couple's real estate conveyances.

There is a dearth of evidence that, at the pertinent times of conveyance, Mr. Kerr even recognized that a joint survivorship relationship was being created with his wife in such property, although it is inferable reasonably that he understood that Mrs. Kerr would " * * * get * * * " his property if he predeceased her, and that he would own such property outright if she predeceased him. There is no showing that the attraction of insulating himself against viable liability to pay his federal income taxes by this method of deeding ever crossed his mind.

Of course, it is inferable reasonably also that, after Mr. Kerr became alarmed over the ultimate consequences of his failure ever to have filed federal income tax returns, Mrs. Kerr became aware of the reason for his deep concern. This does not permit reasonably, however, the further inference that Mr. Kerr ever contemplated the protection against the collection by the national government of his income taxes the creation of the entirety tenancies had provided, was providing or might have provided. This Court does not find any actual intent to delay, hinder or defraud the plaintiff on Mr. Kerr's part from this record. So it is that the plaintiff is entitled to no relief herein under the provisions of T.C.A. §§ 64–301, 64–315.

■ As noted, the plaintiff asserts also its right to relief under the provisions of T.C.A. §§ 64–309, 64–311, 64–312, on the ground that Mr. Kerr was insolvent in 1959, 1962, 1964 and 1966 where various conveyances were made to him and Mrs. Kerr as such tenants. Mr. Kerr was insolvent at those times under the provisions of T.C.A. § 64–309,[9] if the fair market value of his property would not then have covered his obligations as they fell due. *Hyde Properties v. McCoy*, C.A.6th (1974), 507 F.2d 301, 307[14], citing *State ex rel. v. Caldwell, et al.*, C.A.Tenn. (1937), 21 Tenn.App. 396, 400[6], 111 S.W.2d 377,[10] certiorari denied

9. " * * * A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * * " T.C.A. § 64–309.

10. The rule is actually stated therein, as follows: " * * * The only way to tell whether a[n] * * * individual is solvent or insolvent at a given time is to take into consideration the value of all the property on the market at that time, that is, the valuation placed upon such property should be the price it would bring in the open market taking into consideration the fact that the owner would sell, but did not have to sell, and the buyer would buy, but did not have to buy. *Alloway v. Nashville*, 88 Tenn. 510, 13 S.W. 123; 66 C.J. 418. And, taking all

(1937). Under that rule, the Court hereby FINDS that Mr. Kerr was not insolvent at the time of the creation of the respective tenancies by the entirety in 1959, 1962, 1964 and 1966.

Even if, which this Court does not find, the fair cash market value of Mr. Kerr's interest in the real estate involved was as much as 20% of such value, the value of all his property on the market at the given times to a willing, but uncoerced, seller and buyer was not shown to have been in such amount that he was unable at any of those times to meet his obligations as they matured in the usual course of his business operations.

The value of the amusement devices owned by Kerr Music Company at the end of 1966, alone, was more than $175,000, for example. The plaintiff's IRS elected not to include these items of property in their computation of Mr. Kerr's net worth at the pertinent times, because many of them had depreciated (under the government's theory) to the point of no market value. However, the proof is undisputed that, at all pertinent times, the market value of those machines was far greater than the amounts IRS computations found to be the negative net worth of Mr. Kerr. In addition, it is undisputed that Mr. Kerr did pay his obligations as they matured in the ordinary course of his commercial operations. Furthermore, as a matter of policy, IRS decided against making a levy on and offering for sale "gaming" devices in order to enforce collection of Mr. Kerr's assessed taxes, penalties and interest.

It results that the plaintiff is entitled to no relief under the provisions of T.C.A. §§ 64–309, 64–311, and 64–312.

The defendant Mr. Fred A. Kerr has admitted that the plaintiff United States of America is entitled to recover from him $67,410.78 with interest to the date of judgment and the statutory additions. (The final judgment herein will so provide.) Although the Court has found and concluded

that the plaintiff is not entitled to the setting aside as fraudulent of the aforementioned 6 conveyances to Mr. and Mrs. Kerr, as tenants by the entirety, this must not be construed as an adjudication that the plaintiff is precluded from pursuing other available methods of undertaking to collect the income taxes due from Mr. Kerr.

" *   *   * [T]he 'Power to lay and collect Taxes' is a specifically enunciated power of the Federal Government, Const., Art. I, § 8 cl. 1.   *   *   * " *G. M. Leasing Corp. v. United States* (1977), 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530, 544–545. Mr. Justice Brewer stated for the Supreme Court many years ago:

> *   *   * Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefits to any property, but only secures to the citizen that special benefit which results from protection of his person and property, and the promotion of those various schemes which have for their object the welfare of all. "The public revenues are a portion that each subject gives of his property in order to secure and enjoy the remainder." *   *

*Illinois Central Railroad Co. v. City of Decatur* (1893), 147 U.S. 190, 198, 13 S.Ct. 293, 294, 37 L.Ed. 132, 134. Our government has a need to secure promptly the collection of its revenues. *Phillips v. Commissioner of Internal Revenue* (1931), 283 U.S. 589, 596, 51 S.Ct. 608, 611, 75 L.Ed. 1289, 1297.

Mr. and Mrs. Kerr have created a sizeable estate during, and briefly before, their marriage. In so far as this record reflects, neither of them paid any federal income taxes on their acquisitions, at times when citizens generally, as it is noticed judicially, paid taxes on their earnings. It is pertinent

---

of his property together, if he is unable to meet his obligations as they mature in the usual course of business, he is insolvent. *Minton v.*

*Stahlman*, 96 Tenn. 98, 108, 34 S.W. 222. *   *   * "
*Idem.*

that it is easier to accumulate a modicum of wealth while not paying taxes on the income derived than to amass a fortune after making such payments.

Mr. Kerr's liability to the plaintiff for taxes is a debt and is subject to collection in the same manner in which other debts are collectible. *Price v. United States* (1926), 269 U.S. 492, 500, 46 S.Ct. 180, 70 L.Ed. 373, 377–378. Included specifically in the plaintiff's case is its right of collection by summary administrative means. *Phillips v. Commissioner of Internal Revenue, supra,* 283 U.S. at 595, 51 S.Ct. at 611, 75 L.Ed. at 1296. Where Mr. Kerr, or any person liable for a federal tax, has neglected or refused to pay it after demand, the amount of that tax, interest and penalty becomes a lien in its favor on " * * * all property and rights to property, whether real or personal, belonging to such person * * * " liable to pay that amount. 26 U.S.C. § 6321; *Metropolitan Life Ins. Co. v. United States,* C.C.A.6th (1939), 107 F.2d 311, 313.

■ It may be that from the evidence adduced herein the real estate acquired by Mr. and Mrs. Kerr from their joint activities constitutes equal partnership property, in which he owns a 50% interest. *Cf.* T.C.A. § 61–105. Under the Uniform Partnership Act in Tennessee, T.C.A. § 61–101, et seq., when a partnership once acquires realty with partnership funds and for partnership purposes, the realty then becomes personalty for all purposes. *Cultra, et al. v. Cultra, et al.* (1949), 188 Tenn. 506, 511(2), 221 S.W. 533. Where a partner owes an individual tax, the government's tax lien with respect to partnership property extends to his interest in the surplus of the partnership property. *United States v. Kaufman* (1925), 267 U.S. 408, 414, 45 S.Ct. 322, 324, 69 L.Ed. 685, 689 (headnote 1). Such interest, in other words, is " * * * his full interest in the partnership property free and clear of other partnership indebtedness." *F. P. Baugh, Inc. v. Little Lake Lumber Co.,* C.A. 9th (1961), 297 F.2d 692, 3 A.L.R.3d 625, 632[13], certiorari denied (1962), 370 U.S. 909, 82

S.Ct. 1256, 8 L.Ed.2d 404. The ultimate answer to these questions, in the light of Mr. and Mrs. Kerr's having taken deeds to these properties as tenants by the entirety, would appear to lie within their respective intentions at the times of conveyance to them. It is said:

> * * * [T]here was also a presumption that the ownership of real estate was where the minument of title placed it. Thus, if by all the circumstances attending the transaction, it appeared that in the intention of the parties it was purchased for and was treated as a partnership property, the presumption of ownership arising from the face of the deed would be overcome, and the property would be treated as belonging to the partnership. The provision of the Uniform Partnership Act that unless the contrary intention appears, the property acquired with partnership funds is partnership property, must also be applied in this context. [Footnote references omitted.]
> * * *

60 Am.Jur.2d 22, Partnership, § 92, citing *inter alia* (as authority for the last statement hereinabove), *Brown v. Brown,* C.A. Tenn. (1958), 45 Tenn.App. 78, 320 S.W.2d 721, certiorari denied (1959).

In summary then, it is the decision of this Court:

(1) that the plaintiff United States of America recover from the defendant Mr. Fred A. Kerr the sum of $67,410.78 with interest [11] and statutory additions herein relating to the tax years 1956, 1957, 1958, 1959, 1961, 1964 and 1965;

(2) that as to the claim of the plaintiff against the defendants Mr. and Mrs. Kerr, that the conveyances of 6 parcels of real estate conveyed to them in 1959, 1962, 1964 and 1966, respectively, were fraudulent as to the plaintiff as a creditor of the plaintiff, the plaintiff is denied all relief; and

(3) that nothing in the decision of this Court herein shall be construed as precluding the plaintiff from pursuing other avail-

11. Counsel for the parties will undertake to agree on the proper amount of accrued interest and additions on such date and so advise the clerk of this Court.

able methods of collecting any and all federal income taxes due from the defendant Mr. Fred A. Kerr.

Rule 58(1), Federal Rules of Civil Procedure.