**In re Travis HICKS, Debtor.**

**George W. STEVENSON, Chapter 7 Trustee, Plaintiff,**

**v.**

**Marie Hodgson HICKS, Defendant.**

**Bankruptcy No. 91–11472.**
**Adv. No. 92–0978.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Jan. 9, 1995.

---

Michael P. Coury, Humphreys Dunlap Wellford Acuff & Stanton, P.C., Memphis, TN, for plaintiff George W. Stevenson, Trustee.

M. Stuart Johnson, Memphis, TN, for defendant Marie Hodgson Hicks.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO AVOID FRAUDULENT CONVEYANCE AND FOR EQUITABLE RELIEF

G. HARVEY BOSWELL, Bankruptcy Judge.

This matter is before the Court on a complaint filed by the Chapter 7 case Trustee,

George Stevenson, to avoid a fraudulent conveyance pursuant to 11 U.S.C. § 544(b), to recover, for the benefit of the estate, the value of property that was allegedly transferred to the defendant, Marie Hodgson Hicks, pursuant to 11 U.S.C. § 550(a)(1), and for other equitable relief. In his amended complaint the case Trustee alleges that the debtor, Travis Hicks, transferred the proceeds of an insurance settlement to his wife, the defendant, with the intent to delay, hinder, or defraud his creditors. A trial on the merits was held on September 26, 1994. Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following shall serve as the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

The defendant, Marie Hodgson Hicks, has been married to the debtor, Travis Hicks, since 1982. The couple separated some time in 1987, when Mrs. Hicks moved to Knoxville, Tennessee. At the time of their marriage, Mr. Hicks owned a farm of approximately 400 acres, located near Byhalia, Mississippi. Farmers Home Administration (FmHA) holds a first mortgage on this property.[1] In 1983, the house located on debtor's farm was extensively damaged by fire. A subsequent insurance claim for property damage was denied by Shelter Insurance Company. As a result, the debtor filed suit against Shelter Insurance Company, and a jury verdict in debtor's favor was rendered in December of 1988. As a result of this verdict and judgment, Mr. Hicks was issued a check in the amount of $256,426.56, which represented debtor's proceeds from the lawsuit. Mr. Hicks received this check from his attorney on March 23, 1989. Although the debtor and his wife were still separated at the time, Mrs. Hicks accompanied her husband to his attorney's office when he received these funds.

On March 24, 1989, one day after receiving the insurance proceeds from his attorney, Mr. Hicks, accompanied by the defendant, purchased three money orders with these proceeds at United Southern Bank in Oxford, Mississippi. Two of the money orders, number 31960 and number 31959, were each in the amount of $100,000, and one of the money orders, number 31961, was in the amount of $56,426.56. After purchasing these money orders Mr. and Mrs. Hicks began traveling back to Knoxville, Tennessee, where Mrs. Hicks resided. On the same day, while they were in Nashville, Tennessee, Mr. and Mrs. Hicks purchased a certificate of deposit, number 190175, in the amount of $100,000 at Sovran Bank. This certificate of deposit was purchased with money order number 31960 under the joint name of "Travis Clayton Hicks and Marie Hodgson Hicks." Mr. Hicks then used money order number 31959 to open a liquid investment account at Sovran bank in the name of "Travis Clayton Hicks or Marie Hodgson Hicks," using Mrs. Hicks' Knoxville address as the address for the account, even though Mr. Hicks still resided in Byhalia, Mississippi. The couple then completed their trip back to Knoxville.

### Disposition of the $56,426.56 Money Order

Sometime before debtor left Knoxville to go home to Mississippi, he transferred the remaining money order in the amount of $56,426.56, to the defendant. On March 28, 1989, the defendant, Mrs. Hicks, deposited $3000 into her checking account, number 158–157–3, at Valley Fidelity Bank and Trust Company in Knoxville, Tennessee, and she deposited $53,426.50 into her savings account, number 18–81–00600–9, at the same bank. The record shows that over the period of the next several months the defendant used the monies in these two accounts for various reasons, which included making a $20,000 "loan" to her daughter, Stacy Naville. There is no proof in the record that demonstrates that Mr. Hicks received any consideration for the transfer of this money order. Mr. Hicks failed to give any credible explanation for his failure to deposit these funds into an account in his name.

1. At trial, Aaron Goolsby, District Supervisor for FmHA, testified that during the 1980's he was responsible for administering and supervising various loans made by FmHA to Travis Hicks in connection with Mr. Hicks' farming operation in Byhalia, Mississippi. Mr. Goolsby testified that in the Spring of 1989, Mr. Hicks was indebted to FmHA in the approximate amount of $788,000.

### Disposition of the $100,000 Liquid Investment Account

On April 17, 1989, Mr. and Mrs. Hicks withdrew $100,000 from the liquid investment account at Sovran and purchased two $50,000 certificates of deposit, numbers 0359820 and 0359819, at National Bank of Commerce in the name of Marie Hodgson Hicks. Upon maturity, the proceeds of these certificates of deposit were deposited into NBC Account Number 1243070 in the name of Marie Hodgson Hicks on November 14, 1989. The record indicates that Mrs. Hicks continued to use these funds for her benefit. There was no evidence presented at trial that the debtor received any consideration for the transfer of the $100,000 from the liquid investment account.

### Disposition of the $100,000 Certificate of Deposit

In November of 1989, the defendant purchased a house and approximately 400 acres of real property located in Hickory Valley, Tennessee. Debtor and defendant borrowed approximately $300,000 from Hardeman County Bank in order to purchase this property. In applying for this loan, Mr. and Mrs. Hicks submitted a financial statement listing the Byhalia, Mississippi property as an asset, although the financial statement failed to mention the debtor's substantial indebtedness to FmHA.

At the loan closing, Mr. and Mrs. Hicks signed a promissory note in favor of the bank for the purchase price. The collateral for the note consisted of the $100,000 joint CD at Sovran Bank which had been purchased by Mr. Hicks with the settlement proceeds from Shelter Insurance Company. The additional collateral consisted of a note and deed of trust in favor of Mr. Hicks from Mr. and Mrs. Bob Christian. The bank also required a first mortgage on the farm. No cash down payment was made. Although both debtor and his wife were liable on the note, the warranty deed reflected title in Mrs. Hicks' name only. At trial, Wesley Jenkins, the Hardeman County Bank loan officer who handled the loan transaction testified that debtor protested signing the note because Mrs. Hicks alone was purchasing the property. Mr. Rex Brotherton, a former Vice President of lending at Hardeman County Bank testified that the debtor was eventually released from liability on the note.

In March of 1990, debtor and defendant redeemed the Sovran Bank certificate of deposit for approximately $109,250 and used the money to make a payment on the loan for the Hickory Valley property. The rest of the loan was paid by the sale of certain parcels of the Hickory Valley property, some of which were later repurchased by Mrs. Hicks, and by the sale of timber on the property. At the time of trial, Mrs. Hicks owned approximately 220 acres of the Hickory Valley property as well as a house on the property. Mrs. Hicks testified that one of the main considerations in purchasing the Hickory Valley property was that it would be an ideal place for Mr. Hicks to raise field trial dogs.

At trial, Mrs. Hicks testified that she purchased the $100,000 certificate of deposit used to secure the loan for the purchase of the Hickory Valley property from her husband. Mrs. Hicks claims that she offered to buy the certificate of deposit from the debtor the day after it had been purchased from Sovran Bank. At trial she testified that she purchased the certificate of deposit with approximately $100,000 which she had saved in a lock box. She stated that she had wrapped the lock box in freezer paper, marked it with the word "liver" and stored it in her freezer. Mrs. Hicks testified that her "savings" consisted of money she received from her first divorce, money Mr. Hicks gave her over the years for living expenses, and cash gifts given to her by Mr. Hicks.

### Indebtedness to Farmers Home Administration

On March 28, 1989, Mr. Goolsby, District Supervisor for FmHA, sent a certified letter, return receipt requested, to Mr. Hicks, making a demand for a portion of the insurance settlement proceeds. Mr. Goolsby testified that Mr. Hicks never responded to FmHA's demand and that FmHA never received any portion of the settlement proceeds. FmHA has obtained a non-dischargeable judgment against Mr. Hicks in these proceedings in the amount of $848,053.02. At the time of trial,

Mr. Hicks was indebted to FmHA in the amount of $637,267.78.

## DISCUSSION AND CONCLUSIONS OF LAW

### Avoidance of Fraudulent Conveyances

■ Pursuant to 11 U.S.C. § 544(b), a bankruptcy Trustee may "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." If such a transfer is avoided, the Trustee may recover the value of the transfer from the initial transferee. *See* 11 U.S.C. § 550(a). Under Tennessee law, all conveyances made with the intent or purpose to delay, hinder or defraud creditors are void. Tenn.Code Ann. §§ 66–3–101; 66–3–308. Whether or not a particular transfer is declared fraudulent is determined by the facts and circumstances of each case. *See Macon Bank & Trust Co. v. Holland,* 715 S.W.2d 347, 349 (Tenn.Ct.App.1986). Under the Tennessee Fraudulent Conveyance Act, actual intent to defraud must be shown by a preponderance of the evidence. *United States v. Kerr,* 470 F.Supp. 278 (E.D.Tenn. 1978). The Trustee has met his burden in this case.

■ Many "badges of fraud" have been identified by the Tennessee Appellate Courts to assist trial Courts in determining a debtor's intent for fraudulent conveyance purposes. The badges of fraud are as follows:

1. The transferor is in a precarious financial condition.
2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
3. Inadequate consideration was given for the transfer.
4. Secrecy or haste existed in carrying out the transfer.
5. A family or friendship relationship existed between the transferor and the transferee(s).
6. The transfer included all or substantially all of the transferor's nonexempt property.
7. The transferor retained a life estate or other interest in the property transferred.
8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.
9. There is a lack of innocent purpose or use for the transfer.

*See Weaver v. Nelms,* 750 S.W.2d 158 (Tenn.Ct.App.1987); *Macon Bank and Trust Co. v. Holland,* 715 S.W.2d 347 (Tenn.Ct. App.1986); *Gurlich's, Inc. v. Myrick,* 54 Tenn.App. 97, 388 S.W.2d 353 (1964); and *Union Bank v. Chaffin,* 24 Tenn.App. 528, 147 S.W.2d 414 (1940).

■ The transfers of the $56,420.56 money order, the proceeds of the $100,000 certificate of deposit, and the $100,000 from the liquid investment account which were made by the debtor to his wife, the defendant, are overwhelmingly tainted with badges of fraud. The debtor was in a precarious financial condition at the time the transfers were made to his wife, and he knew or should have known that he was substantially indebted to FmHA at the time the transfers were made. Furthermore, the initial transfers to the defendant were made shortly after the debtor acquired the insurance proceeds. The only evidence presented to the Court that any consideration was given to the debtor by the defendant in exchange for any of the transfers was the interesting story told by the defendant and debtor at trial that the defendant "purchased" from the debtor the $100,-000 certificate of deposit used as collateral for the purchase of the Hickory Valley property. After hearing both witnesses give inconsistent testimony regarding this alleged transaction, observing the demeanor of both witnesses, and reviewing previous inconsistent statements of both witnesses pertaining to this transaction, the Court finds this story to be unbelievable. The Court finds that no adequate consideration was given for this transfer or for any of the other transfers in question by the debtor to the defendant. Defendant's argument that fair consideration was provided for the transfers is simply without merit.

■ The Court also disagrees with defendant's contention that the transfers were made without the intent to hinder, delay, or defraud creditors. The defendant has failed to produce evidence which would prove that a legitimate reason existed for the debtor transferring the money to the defendant.[2] Under these circumstances, the Court may properly presume fraud. *See Citizens Bank & Trust Co. v. White*, 12 Tenn.App. 583 (1930); *Boyd v. American Nat'l Ins. Co.*, 20 Tenn.App. 631, 103 S.W.2d 338 (1936); *Commerce Union Bank v. Sharber*, 20 Tenn.App. 451, 100 S.W.2d 243 (1936).

After thoroughly considering the testimony of the witnesses and the arguments of counsel, and after carefully examining all of the evidence in the record, the Court concludes that the transfers in question were made with the intent to hinder, delay, or defraud creditors, and they are therefore fraudulent conveyances under Tennessee Code Annotated §§ 66–3–101 and 66–3–308 and are avoidable pursuant to 11 U.S.C. § 544(b). As a result of the avoidability of these transfers, the Trustee is entitled to recover from defendant the value of these transfers, $256,426.56, under the provisions of 11 U.S.C. § 550(a)(1).

### *Imposition of a Constructive Trust*

■ In addition to the avoidance of the transfers made by debtor to the defendant, the Trustee seeks the imposition of a constructive trust over the Hickory Valley, Tennessee property purchased by the defendant with the funds in question. Under Tennessee state law and federal bankruptcy law the equitable interest in property acquired by fraud may remain property of its rightful owner only to the extent that it is identifiable. *Emerson v. Maples (In re Mark Benskin & Co., Inc.)*, 161 B.R. 644, 654 (W.D.Tenn.1993). Therefore, the person who acquired the property by fraud merely obtains title or a possessory interest in the property, and is said to hold this property in trust for its rightful owner. Such a trust is referred to as a "constructive trust" because it is "constructed" by a Court of equity "to satisfy the demands of justice" and to prevent unjust enrichment. *In re Mark Benskin & Co., Inc.* at 654 (citing *McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1014 (M.D.Tenn.1983)).

■ Under Tennessee law, in order for a constructive trust to be created, there must be proof of a wrongful act, specific property acquired by a wrongdoer, which is traceable to wrongful behavior, and an equitable reason why the party holding the property should not be allowed to keep it. *Benskin* at 652 (quoting *Merrill v. Abbott, et al. (In re Independent Clearing House Co., et al.)*, 41 B.R. 985, 1000 (Bankr.D.Utah 1984)). This last element is usually met when it can be shown that the party holding the property is not a good faith, bona fide purchaser for value. *Benskin* at 652; *see also CH Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311 (11th Cir.1992); *Garland v. Higgins*, 160 Tenn. 381, 25 S.W.2d 583 (1930).

After considering all of the evidence, as well as the arguments of counsel, the Court concludes that the imposition of a constructive trust over the Hickory Valley property or its proceeds, for the benefit of the debtor's creditors, is appropriate. Evidence was presented that both defendant and debtor committed wrongful acts which led to the defendant acquiring the Hickory Valley property. Because Mrs. Hicks did not acquire this property in good faith, and because she acquired it with the use of funds which should have been used to pay FmHA, the Court

---

2. It should be noted that both debtor and defendant have been prosecuted by the United States of America in the United States District Court for the Western District of Tennessee, Eastern Division, Case numbers 94–10017–01 and 94–10017–02, respectively, for, *inter alia*, Bankruptcy Fraud, Conspiracy, and Perjury in connection with the same transactions that are the basis for the present adversary proceeding. The Government alleged that debtor and defendant participated in a complex scheme to defraud creditors. One of the specific allegations made was that when Mr. Hicks' creditors requested an explanation as to what disposition he made of the $256,426.56 in insurance proceeds that he received prior to his Bankruptcy filing, Mr. and Mrs. Hicks lied in order to enable themselves to retain those assets for their personal use and benefit.

Both Mr. and Mrs. Hicks pled guilty to the numerous charges of Perjury. The fact that they admitted to perjuring themselves evidences the intent by both debtor and defendant to conspire to defraud creditors for their mutual benefit.

472

finds that equity demands that she not be allowed to keep this property. Retention of the property by the defendant would result in the unjust enrichment of the defendant to the detriment of the creditors of the estate.

This trust shall be in the form of a lien against the Hickory Valley property in the amount of the avoided transfer. However, if the defendant independently, and without the use of or reliance upon the Hickory Valley property, satisfies the judgment which has been imposed by this Court, then the trust shall be dissolved and the lien will terminate.

It is therefore **ORDERED** that judgment be, and is hereby, entered for the Trustee in the amount of two-hundred fifty-six thousand four hundred twenty-six dollars and fifty-six cents ($256,426.56), plus pre-judgment interest at the statutory rate from the date of the filing of the bankruptcy petition.

It is **FURTHER ORDERED** that a constructive trust be, and is hereby, created over the property, house, and acreage located at Hickory Valley, Tennessee and owned by the defendant.

It is **FURTHER ORDERED** that a lien in the amount of two-hundred fifty-six thousand four hundred twenty-six dollars and fifty-six cents ($256,426.56), plus pre-judgment interest at the statutory rate from the date of the filing of the bankruptcy petition, be, and is hereby, created in favor of the Trustee over the defendant's property, house and acreage in Hickory Valley, Tennessee. However, the creation of this lien is made dependent upon the Trustee's compliance with any applicable law in the State of Tennessee which addresses the validity, creation, perfection, or enforcement of such liens.

It is **FURTHER ORDERED** that the Trustee is authorized to sell or liquidate said property pursuant to 11 U.S.C. § 363, with all liens of record attaching to the sale proceeds in the order of their priority.

**ALL OF WHICH IS SO ORDERED.**