IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2, 2010 Session

**ANGELA BRANDENBURG, ET AL. v. JAMES STEVEN HAYES, ET AL.**

**Appeal from the Circuit Court for Sevier County**
**No. 2007-0269-II     Richard R. Vance, Judge**

_____

**No. E2009-00405-COA-R3-CV - FILED JULY 14, 2010**

_____

Plaintiff filed a complaint against Defendant Husband and Wife seeking injunctive relief. Wife filed a counterclaim and cross-claim against Plaintiff and Husband alleging fraudulent conveyance, conversion, and misappropriation of assets. After a bench trial, the trial court found that Plaintiff and Husband devised a scheme to cloud the ownership of the business jointly owned by Husband and Wife and to hide assets from Wife during an impending divorce. The trial court awarded damages totaling $175,000 to Wife. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Steven E. Marshall, Sevierville, Tennessee, for the appellants, Angela Brandenburg and Black Bear Cabins & Weddings, Inc.

Scott D. Hall, Sevierville, Tennessee, for the appellee, Cynthia Herron Hayes.

Douglas R. Beier, Morristown, Tennessee, for the appellee, James Steven Hayes.[1]

**OPINION**

**I. BACKGROUND**

James Steven Hayes ("Husband") and Cynthia Herron Hayes ("Wife") were married

_____

[1]James Steven Hayes did not file a brief for this appeal.

and together operated a wedding chapel business. The couple later expanded their operation to include an overnight cabin rental business. In 2004, the Hayeses merged the wedding chapel business and cabin rental company into one entity – Mountain Mist Cabins & Weddings ("Mountain Mist"). When marital problems arose, the couple separated and they limited their communication with each other. After separating, the Hayeses agreed that Husband would manage one of the wedding chapels while Wife assumed control over the other wedding chapel. The cabin rental business was to continue with Wife's involvement until a divorce settlement was finalized.

Angela Brandenburg ("Brandenburg") worked as an office manager at Mountain Mist in 2004. At that time, Mountain Mist was primarily managed by Husband. Brandenburg's duties as the office manager included handling payroll, bookkeeping, making reservations, and addressing the needs of homeowners. As the office manager, Brandenburg earned a salary of $600 per week.

According to Brandenburg, after she worked at Mountain Mist for about six months, Husband abandoned the business because of his financial problems. Eventually, Husband filed for Chapter 7 personal bankruptcy in July 2005.

After Husband allegedly abandoned Mountain Mist, Brandenburg incorporated a business, Black Bear Cabins & Weddings ("Black Bear"), in Sevier County in February 2005. She used the chapel formerly associated with Mountain Mist after executing a lease with Husband for the chapel building. Brandenburg also took over the escrow account for Mountain Mist and created a separate checking account for Black Bear.

For a time, Husband was an employee of Black Bear, and he received a weekly salary of $600. Husband worked for Black Bear up until April 27, 2007, when Brandenburg filed a complaint for injunctive relief against both Husband and Wife.[2] In the complaint, Brandenburg asserted that she was the owner of Black Bear. Brandenburg filed her complaint after the Hayeses divorce proceeding was finalized. The final divorce decree was entered April 18, 2007.[3]

---

[2]Husband filed for unemployment benefits after leaving Black Bear. Husband collected approximately $2,750 in unemployment compensation benefits. He eventually returned the benefits after the Appeals Tribunal for the Tennessee Department of Labor found that he was not entitled to unemployment benefits.

[3]In the final divorce decree, Wife was awarded all of the assets associated with Black Bear f/d/b/a Mountain Mist including the domain names and URLs associated with Black Bear, the reservation system, the telephone numbers, the accounts, and all equipment.

Wife and Husband filed separate answers to Brandenburg's complaint, and Wife eventually filed a counter-complaint and cross-claim against Brandenburg and Husband alleging fraudulent conveyance, conversion, and misappropriation of assets.

According to Wife, Husband and Brandenburg devised a scheme to hide assets from her during their impending divorce proceeding. In order to avoid complying with the automatic injunction concerning marital assets, Husband rolled the assets of Mountain Mist into a new legal entity – Black Bear. Black Bear was created in order for Husband to maintain legal control over Mountain Mist and its assets.

After a bench trial, the trial court found that Brandenburg assisted Husband in deceiving Wife and awarded $175,000 in compensatory damages to Wife. The trial court also determined that Wife was the rightful owner of the business and she was entitled to control over the assets associated with Black Bear. Brandenburg appeals the trial court's decision to award control of Black Bear and damages to Wife.

## II.  ISSUES

1.      Whether the trial court erred in finding that fraud was committed by Brandenburg.

2.      Whether there is sufficient evidence to support the trial court's award of damages to Wife.

## III.  STANDARD OF REVIEW

We accord a presumption of correctness to the factual findings of a trial court sitting without a jury on appeal. Those findings will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). With respect to legal issues, this court's review is conducted under a pure de novo standard of review. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). This court affords "considerable deference to the trial court's factual findings, especially where issues of credibility and weight of testimony are involved." *Bryant v. Baptist Health Sys. Home Care*, 213 S.W.3d 743, 750 (Tenn. 2006).

We review a trial court's award of damages under an abuse of discretion standard. The trier of fact has discretion in determining a fair and reasonable assessment of damages. *BankcorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn. Ct. App. 2006). "Under

the abuse of discretion standard, a trial court's ruling will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). Only when a trial court "applies an incorrect legal standard or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining" do we find that the trial court abused its discretion. *Id.*

## IV. DISCUSSION

### A.

Brandenburg contends that there is no evidence that she or Black Bear committed any acts of fraud. Brandenburg asserts that the trial court erred by concluding that she committed fraud. Essentially, Brandenburg claims that there is a complete lack of proof in this case.

In Tennessee, fraud is never presumed. There is a presumption "in favor of fairness of the transaction and the innocence of the person accused." *Williams v. Spinks*, 7 Tenn. App. 488, 494 (1928). Therefore, persons alleging fraud "must establish their charges by a preponderance of the evidence and not leave the matter to mere speculation or guess." *See Jarmakowicz v. Suddarth*, No. M1998-00920-COA-R3-CV, 2001 WL 196982, at *11 (Tenn. Ct. App. M.S., Feb. 28, 2001) (citations omitted). A plaintiff that "alleg[es] the tort of fraud in an action for damages," must meet "a preponderance of the evidence burden of proof." *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008) (citing *Noblin v. Christiansen*, No. M2005-01316-COA-R3-CV, 2007 WL 1574273, at *11 (Tenn. Ct. App. M.S., May 30, 2007)).

A fraudulent conveyance is one made "[w]ithout a fair consideration, leaving the grantor insolvent; or. . .[m]ade with actual intent to hinder, delay or defraud creditors." *Hicks v. Whiting*, 258 S.W. 784, 794 (Tenn. 1924). A determination of whether a conveyance is fraudulent is dependent upon the facts and circumstances of each case; such fraud is typically proven by circumstantial evidence. *Macon Bank & Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). "Badges of fraud" is a term to describe facts that create suspicion around a transaction and "call for an explanation." *Id.*; *see also Nadler v. Mountain Valley Chapel Bus. Trust*, No. E2003-00848-COA-R3-CV, 2004 WL 1488544, at *2 (Tenn. Ct. App. E.S., June 30, 2004).[4]

---

[4]The following are considered "badges of fraud" by Tennessee courts:
1. The transferor is in a precarious financial condition;
2. The transferor knew there was or soon would be a large money judgment rendered against the transferor;

(continued...)

Conversion is "the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *See Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 398 (Tenn. Ct. App. 1997) (quoting *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)).

In the instant case, the trial court awarded complete control and ownership of Black Bear to Wife after finding that Brandenburg and Husband perpetuated a fraud to hide assets from Wife. This court affords "considerable deference" to a trial court's factual determinations "when the trial court has heard in court testimony." *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Our review of the record indicates that the trial court's findings are supported by a preponderance of the evidence.

Several witnesses testified at the bench trial including Brandenburg. The trial testimony overwhelmingly establishes that Brandenburg participated in a scheme with Husband to hide the assets of Mountain Mist by folding them into a new entity – Black Bear. Husband testified that he was the owner of Black Bear and that Mountain Mist and Black Bear were the same operation. In explaining why he changed the name of the company, Husband testified, as follows:

> Trying to cloud the issue with my ex-wife on ownership of the business. We were in the middle of a divorce.

On cross examination, Husband admitted to making false statements on his bankruptcy petition under the penalty of perjury. On the bankruptcy petition, Husband failed to claim an ownership interest in Mountain Mist or Black Bear. Nonetheless, in his cross examination testimony, Husband maintained that he started Black Bear with money from Mountain Mist. Husband's testimony was corroborated by his mother, Evelyn Hayes. She worked at both Mountain Mist and Black Bear, and she testified that Husband retained ownership in Black

---

[4](...continued)
3. Inadequate consideration was given for the transfer;
4. Secrecy or haste existed in carrying out the transfer;
5. A family or friendship relationship existed between the transferor and the transferee(s);
6. The transfer included all or substantially all of the transferor's nonexempt property;
7. The transferor retained a life estate or other interest in the property transferred;
8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction; and
9. There is a lack of innocent purpose or use for the transfer.

*See Nadler*, 2004 WL 1488544, at *2 (citing *Stevenson v. Hicks (In re Hicks)*, 176 B.R. 466, 470 (Bankr. W.D. Tenn. 1995)).

Bear. According to Ms. Hayes, Brandenburg claimed to be Husband's friend and that she allowed Husband to put the business in her name in order to conceal his actual ownership of Black Bear.

Although Brandenburg claims that Husband abandoned the business and she is the sole proprietor of Black Bear, her own trial testimony raises suspicion over the creation of Black Bear. Brandenburg testified that she incorporated Black Bear in February 2005 and she operated the business after Husband abandoned it. In her direct testimony, Brandenburg stated:

> He had a wedding chapel and I ended up leasing the wedding chapel from him. He abandoned it.

Nevertheless, Brandenburg acknowledged, on cross examination, that she had no documentation verifying a transfer of assets to her from Husband. She further admitted that the transfer of the account number associated with Mountain Mist's phone numbers to an account number for Black Bear listed Husband as both the buyer and the seller. Brandenburg offered no consideration in exchange for the business and its assets. From Brandenburg's testimony, it becomes clear that the employees, the equipment, the websites, and the customers for Black Bear derived from one source: Mountain Mist.

Importantly, Brandenburg's testimony that Husband was her employee and that she was oblivious to the details of Husband's scheme to hide assets during the impending divorce is directly contradicted by the testimony of Diana Farmer, a paralegal for attorney John Fowler. Mr. Fowler represented Husband in the bankruptcy and the divorce proceedings. Ms. Farmer met with Husband and Brandenburg for the purpose of preparing for both of those matters. She explained that Husband and Brandenburg were together "ninety percent of the time" for visits at the office with her. Ms. Farmer's testimony also revealed that Brandenburg acknowledged that Husband owned Black Bear and that she served as the office manager. She further testified that Husband leased the wedding chapel to Brandenburg for the purpose of disguising his ownership interest in the chapel for the bankruptcy petition. The following exchange occurred at trial between Ms. Farmer and the court.

> Ms. Farmer: In the preparing of the bankruptcy petition, it was mentioned the fact that he owned the cabins, the rental cabins of Black Bear, and that there was equity in that, and as part of that it was like if you had a joint ownership, if the cabins were leases or whatever, that would take away your equity in that. Well, then the lease came into play.
>
> The court: And what did Ms. Brandenburg say?

-6-

Ms. Farmer:  I actually gave them a lease to go by and she said that she had a friend that could backdate it.  And that's where the information came in when I was doing the bankruptcy petition.

Ms. Farmer's testimony is corroborated by the exhibits introduced at trial.  The Lease Agreement for the chapel ("the Lease") entered into by Brandenburg and Husband includes two different dates. The Lease states that it was entered into on February 1, 2005, but the notary public averred that the Lease was executed on February 1, 2004.  Further, Black Bear's corporate charter lists February 11, 2005, as the date of incorporation.  Ms. Farmer's testimony not only explains the inconsistencies in the Lease, but it also demonstrates that there was an intentional and deliberate plan to hide assets on the part of Brandenburg and Husband.  In spite of Brandenburg's claims to the contrary, the scheme to shelter the assets of Mountain Mist under the name of Black Bear appears fairly obvious.

Therefore, in light of the above proof, the preponderance of the evidence shows that Black Bear came into existence by fraudulent conveyance, conversion, and misappropriation of assets.  Brandenburg's contentions challenging the sufficiency of the proof are wholly without merit.  We conclude that the evidence in the record overwhelming establishes that Brandenburg offered no consideration for the business or its assets and that she participated in a scheme to shelter assets from their rightful owner – Wife.  Nothing in the record preponderates against the trial court's findings.  Accordingly, we affirm.

B.

It is well settled that the party seeking damages assumes the burden of proof as to those damages.  *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 57 (Tenn. Ct. App. 2004); *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982).  Damages cannot be based on mere conjecture or speculation.  *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999).  Uncertain, contingent, or speculative damages are unrecoverable. *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (quoting *Maple Manor Hotel, Inc. v. Metropolitan Gov't of Nashville & Davidson County*, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975)).  An award for damages requires proof of damages within a reasonable degree of certainty. *Western Sizzlin*, 741 S.W. 2d at 336 (citing *Wilson v. Farmers Chem. Ass'n*, 444 S.W.2d 185, 189 (Tenn. Ct. App. 1969)).  An injured party may recover lost profits "when their nature and occurrence have been established with reasonable certainty." *Waggoner Motors*, 159 S.W.3d at 58 (citing *Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001)) (other supporting citations omitted).

To recover punitive damages, a trial court must find that a defendant acted either intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). *Hodges* explains that "the primary purpose of a punitive award is to deter misconduct, while the purpose of compensatory damages is to make plaintiff whole." *Id.* at 902. A party seeking punitive damages must prove a defendant's culpable conduct by clear and convincing evidence. *Barnett v. Lane*, 44 S.W.3d 924, 928 (Tenn. Ct. App. 2000). A finding by clear and convincing evidence means that "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges*, 833 S.W.2d at 901. It is within the trial court's discretion to award punitive damages. *See Hunter v. Jackson*, No. W2002-02857-COA-R3-CV, 2003 WL 22071461, at *2 (Tenn. Ct. App. W.S., Aug. 26, 2003).

Brandenburg argues that the only proof of any damages is the testimony of Wife. During Wife's testimony, she estimated her loss of profits on the rental property. Brandenburg insists that Wife's testimony alone cannot support an award for punitive damages, and she claims that Wife produced no corroborating evidence in support of her claim.

Wife counters that "mathematical certainty" is not required for damages awards when "there is substantial evidence in the record and a reasonable inference may be drawn from that evidence." *See ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 28 (Tenn. Ct. App. 2005). "Otherwise in certain instances, the courts would be powerless to help some wronged parties." *See id.*; *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983). We agree.

It appears from the record that the trial court did not award punitive damages as claimed by Brandenburg. The trial court found that "the gross sales of the business" were between $100,000 to $150,000 per year based on Wife's testimony. As a result, the trial court determined that "$100,000 a year would be a reasonable value of income from the business." By the time of trial, 21 months had passed since the entry of the divorce decree awarding ownership of Black Bear to Wife. The trial court awarded $175,000 in damages to Wife for lost profits for the period of 21 months.

The evidence of Wife's lost profits was unrebutted. Wife testified to the worth and the annual revenues of Mountain Mist from 2005 through 2008. At the time that Husband and Brandenburg seized the business, it was worth over a million dollars.

In light of the above evidence, the trial court correctly found that Wife lost $100,000 per year over the period of 21 months. "The law does not require exactness of computation in suits that involve a question of damages growing out of contract or tort." *Hatchel*, 223

S.W.3d at 223. After Wife established the fact that she suffered damages, less certainty was required with regard to the amount of damages. *See Waggoner Motors*, 159 S.W.3d at 58. "The amount of lost profits damages may be based on estimates." *Id.* Wife's testimony regarding the gross sales and net worth of the business was sufficient to support the trial court's award of damages. The trial court did not abuse its discretion by awarding compensatory damages to Wife for lost profits due to the fraud committed by Brandenburg and Husband. Accordingly, we affirm.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs are assessed against the appellant, Angela Brandenburg. The case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE